JOINER, Judge.[1]
Charlie Washington, an inmate on death row at Holman Correctional Facility, appeals the Elmore Circuit Court’s denial of his petition for postconviction relief filed pursuant to Rule 32, Ala. R.Crim. P.
In January 2004, Washington was convicted of murdering Julian and Florence McKinnon pursuant to one scheme or course of conduct and during the course of a robbery and a burglary. The jury, by a vote of 10 to 2, recommended that Washington be sentenced to death. The circuit court followed the jury’s recommendation and sentenced Washington to death. Washington’s convictions and sentence of death were affirmed on direct appeal. See Washington v. State, 922 So.2d 145 (Ala.Crim.App.2005), cert. denied, 546 U.S. 1142, 126 S.Ct. 1152, 168 L.Ed.2d 1008 (2006). We issued the certificate of judgment, making Washington’s direct appeal final, on August 19, 2005.
In August 2006, Washington filed a timely petition for postconviction relief attacking his convictions and death sentence. He filed an amended petition in October 2006. In July 2007, the circuit court dismissed the majority of the claims raised in the amended petition and held an eviden-tiary hearing on the remaining claims— claims related to the performance of his counsel at the penalty phase of his capital-murder trial. In March 2008, the circuit court denied the claims presented at the evidentiary hearing. Washington appealed to this Court. See Rule 32.10, Ala. R.Crim. P.
In this Court’s opinion on direct appeal, we stated the following facts surrounding the double homicide:
*36 “Washington worked for the McKinnons as a handyman, helping the McKinnons maintain their home and property in Millbrook. On Monday, January 20, 2003, Washington drove Mr. McKinnon to Clio in Mr. McKinnon’s Chevrolet Suburban sport-utility vehicle, where Mr. McKinnon sold a piece of land he owned in Clio to Joe Carpenter. Outside the presence of Washington, Carpenter gave Mr. McKinnon $10,000 in cash, wrapped in a thousand-dollar money wrapper, as partial payment for the land; the cash was predominately in $100 bills, but also contained $10 and $20 bills. Mr. McKinnon put the money in his coat pocket and, pursuant to a prearranged agreement between Carpenter and Mr. McKinnon, when the two returned to Washington’s presence, Carpenter told Mr. McKinnon that he would mail Mr. McKinnon a check for the land. Before leaving Clio, Mr. McKinnon and Washington stopped at a tractor repair shop, where Mr. McKinnon purchased a leveling arm. Mr. McKinnon paid for the leveling arm with a $100 bill he took from his wallet.
“Mr. McKinnon and Washington returned to the McKinnons’ residence in Millbrook that afternoon at approximately 4:00 p.m., where Mrs. McKinnon was entertaining guests. Because guests were there, instead of driving Washington, who did not have a car at that time, to his home in Montgomery, Mr. McKinnon allowed Washington to borrow his Volkswagen Jetta automobile to drive home. That evening, at approximately 8:00 p.m., Ernestine Howard, Washington’s live-in girlfriend, telephoned the McKinnons looking for Washington, who had not yet returned home. Mr. McKinnon informed Howard that he had lent his car to Washington and that Washington had left the McKinnons’ residence at approximately 5:00 p.m. Later that evening, at approximately 10:00 p.m., Mr. McKinnon telephoned Howard and asked if Washington had made it home yet; he had not.
“At approximately 9:00 a.m. the next morning, Tuesday, January 21, 2003, Howard telephoned the McKinnons; she received a busy signal. Joe Carpenter also attempted to telephone Mr. McKin-non several times on Tuesday, January 21, but received a busy signal each time. The McKinnons’ daughter also received a busy signal on January 21 when she tried to reach her parents. On the morning of Wednesday, January 22, 2003, Carpenter drove from Clio to Mill-brook to meet with Mr. McKinnon to complete the sale of the land. On the drive, Carpenter telephoned Mr. McKin-non several times from his cellular telephone and again received a busy signal. When Carpenter arrived at the McKin-nons’ residence in Millbrook, he knocked on the door, but no one came to the door. While Carpenter was at the McKinnons’ residence, Howard arrived looking for Washington, whom she had not seen since Monday morning, January 20, when she had driven him to the McKinnons’ residence for work. Howard also knocked on the McKinnons’ door, but no one came to the door. Carpenter then telephoned the McKinnons’ daughter, who told Carpenter where the spare key to the house was located and asked Carpenter to check on her parents. Upon entering the home Carpenter discovered Mrs. McKinnon’s body; he immediately left the home and telephoned emergency 911.
“Law-enforcement officers from the Millbrook Police Department and the Alabama Bureau of Investigation (‘the ABI’) responded to the report. Mrs. McKinnon’s body was found at the base of the staircase leading to the second *37 floor of the house; she appeared to have suffered blunt-force trauma. There were bloodstains and splattered blood on the staircase and several gouges in the stairs at the top of the staircase, indicating that Mrs. McKinnon had been attacked at the top of the stairs, and that the attacker, while striking Mrs. McKin-non, missed her and hit the stairs. Mr. McKinnon’s body was discovered in the master bedroom on the second floor; he also appeared to have suffered blunt-force trauma. Several coins — mainly foreign coins, but also some United States half-dollar coins — were found near his body. The telephone in the master bedroom was on the floor, off the hook, and a thousand-dollar money wrapper was found in the master bathroom. The house had been ransacked, and a window in the kitchen area was broken and open. The shattered glass from the window was inside the house, indicating that the window had been broken from the outside; the broken pane of glass was the pane directly above the latch, indicating that the perpetrator had broken the glass and reached in to unlatch and then open the window in order to gain entry into the residence. An autopsy revealed that Mr. and Mrs. McKinnon had both died from blunt-force trauma to the head, which had resulted in skull fractures and brain damage. In addition, Mrs. McKinnon suffered blunt-force trauma to her back, which broke every one of her ribs. The medical examiner testified that the murder weapon was most likely a hard, dense object or tool.
“During the initial investigation at the scene, law-enforcement officers spoke with both Carpenter and Howard. They learned that Washington had been employed by the McKinnons; that Washington had traveled with Mr. McKinnon to Clio on Monday, January 20; that Mr. McKinnon had received $10,000 in cash at that time for the sale of land; that the McKinnons’ Jetta was missing from the house and had been loaned to Washington sometime earlier in the week; and that Howard had not seen Washington in two days. The $10,000 was not found in the house or anywhere on the McKinnons’ property, and law enforcement issued a BOLO — be on the lookout — for the Jetta. That afternoon, patrol officers with the Montgomery Police Department saw the Jetta in the parking lot of John’s Motel on Air Base Boulevard in Montgomery. When the officers learned that Washington had rented a room at the motel, they knocked on the door and arrested Washington when he opened the door. During a subsequent search of the motel room, law-enforcement personnel discovered $1,700 in cash, mostly in $100 bills, crack cocaine, a black baseball-style cap, and various articles of clothing. In the Jetta, they found an additional $6,300 in cash, all in $100 bills, as well as several United States half-dollar coins and one foreign coin.
“Washington was taken to ABI headquarters where he was interviewed. In his statement, Washington stated that Mr. McKinnon had loaned him the Jetta; that he had driven a friend to Atlanta on the night of Monday, January 20, to purchase drugs; that, on the way, they stopped at a truck stop at the Wire Road exit on Interstate 85; that he had ‘had words’ with a waitress at the truck stop regarding his order (C. 289); and that his friend had given him $2,500 in cash for making the trip. Washington did not provide the name of the friend he had allegedly driven to Atlanta. After Washington gave his statement, law-enforcement personnel obtained a search warrant for the clothes Washing *38 ton was wearing as well as fingernail clippings from Washington. Subsequently, on February 6, 2003, law-enforcement personnel obtained a seizure order for samples of Washington’s hair and saliva.
[[Image here]]
“The State presented evidence indicating that a hair found clenched in Mr. McKinnon’s left hand was the same size, color, and shape of Washington’s hair; that a smear of blood on the doorframe between the dining room and the laundry room in the McKinnons’ residence contained Washington’s DNA; that a bloodstain on the shirt Washington was wearing when he gave his statement contained both Mr. McKinnon and Mrs. McKinnon’s DNA, as well as Washington’s DNA; and that a bloodstain on one of Washington’s socks found in the motel room contained Mr. McKinnon’s DNA. The McKinnons’ DNA was not found on the jeans Washington was wearing when he gave his statement and no DNA at all was' found on the boots Washington was wearing. No fingerprints were found in the McKinnons’ residence and no blood was found in the Jetta. The murder weapon was never recovered.”
922 So.2d at 154-57.

Standard of Review

Washington appeals the circuit court’s denial of his petition for postconviction relief filed pursuant to Rule 32, Ala. R.Crim. P.—a proceeding initiated by Washington to challenge his conviction and sentence of death. Washington has the burden of pleading and proving his claims. As Rule 32.3, Ala. R.Crim. P., provides:
“The petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief. The state shall have the burden of pleading any ground of preclusion, but once a ground of preclusion has been pleaded, the petitioner shall have the burden of disproving its existence by a preponderance of the evidence.”
“The standard of review this Court uses in evaluating the rulings made by the trial court [in a postconviction proceeding] is whether the trial court abused its discretion.” Hunt v. State, 940 So.2d 1041, 1049 (Ala.Crim.App.2005). However, “[W]hen the facts are undisputed and an appellate court is presented with pure questions of law, [our] review in a Rule 32 proceeding is de novo.” Ex parte White, 792 So.2d 1097, 1098 (Ala.2001). “[W]e may affirm a circuit court’s ruling on a postconviction petition if it is correct for any reason.” Smith v. State, [Ms. CR-08-0638, September 30, 2011] — So.3d -, - (Ala.Crim.App.2011).
As stated above, the majority of the claims raised by Washington were summarily dismissed based on defects in the pleadings and the application of the procedural bars in Rule 32.2, Ala. R.Crim. P. When discussing the pleading requirements for postconviction petitions, we have stated:
“The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis for the claim must be included in the petition itself. If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petitioner is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b). See Bracknell v. State, 883 So.2d 724 (Ala.Crim.App.2003).”
*39 Hyde v. State, 950 So.2d 344, 356 (Ala.Crim.App.2006).
“ ‘Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.’ Boyd v. State, 746 So.2d 364, 406 (Ala.Crim.App.1999). In other words, it is not the pleading of a conclusion ‘which, if true, entitle[s] the petitioner to relief.’ Lancaster v. State, 638 So.2d 1370, 1373 (Ala.Crim.App.1993). It is the allegation of facts in pleading which, if true, entitle a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala. R.Crim. P., to present evidence proving those alleged facts.”
Boyd v. State, 913 So.2d 1113, 1125 (Ala.Crim.App.2003). “[T]he procedural bars of Rule 32[.2, Ala. R.Crim. P.,] apply with equal force to all cases, including those in which the death penalty has been imposed.” Burgess v. State, 962 So.2d 272, 277 (Ala.Crim.App.2005).
Some of Washington’s claims were also dismissed based on his failure to comply with Rule 32.7(d), Ala. R.Crim. P. In discussing the application of this rule we have stated:
“[A] circuit court may, in some circumstances, summarily dismiss a postconviction petition based on the merits of the claims raised therein. Rule 32.7(d), Ala. R.Crim. P., provides:
‘“If the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition. Leave to amend shall be freely granted. Otherwise, the court shall direct that the proceedings continue and set a date for hearing.’
“ ‘ “Where a simple reading of the petition for post-conviction relief shows that, assuming every allegation of the petition to be true, it is obviously without merit or is precluded, the circuit court [may] summarily dismiss that petition.” ’ Bishop v. State, 608 So.2d 345, 347-48 (Ala.1992) (emphasis added) (quoting Bishop v. State, 592 So.2d 664, 667 (Ala.Crim.App.1991) (Bowen, J., dissenting)). See also Hodges v. State, [Ms. CR-04-1226, March 23, 2007] — So.3d -, - (Ala.Crim.App.2007) (a postconviction claim is ‘due to be summarily dismissed [when] it is meritless on its face’)[, rev’d on other grounds, — So.3d - (Ala.2011) ].”
Bryant v. State, [Ms. CR-08-0405, February 4, 2011] — So.3d -, - (Ala.Crim.App.2011).
With these principles in mind, we review the claims raised by Washington on appeal.
I.
Washington argues that his attorneys were ineffective for failing to investigate and to present mitigation evidence at the penalty phase of his capital-murder trial. He raises several different grounds in support of this claim.
To prevail on a claim of ineffective assistance of counsel the petitioner must show (1) that counsel’s performance was deficient and (2) that the petitioner was prejudiced by the deficient performance. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
“Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after *40 conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.”
Strickland, 466 U.S. at 689.
“[T]he purpose of ineffectiveness review is not to grade counsel’s performance. See Strickland [v. Washington], [466 U.S. 668,] 104 S.Ct. [2052] at 2065 [ (1984) ]; see also White v. Singletary, 972 F.2d 1218, 1221 (11th Cir.1992) (‘We are not interested in grading lawyers’ performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.’). We recognize that ‘[Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.’ Strickland, 104 S.Ct. at 2067. Different lawyers have different gifts; this fact, as well as differing circumstances from case to case, means the range of what might be a reasonable approach at trial must be broad. To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or ‘what is prudent or appropriate, but only what is constitutionally compelled.’ Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987).”
Chandler v. United States, 218 F.3d 1305, 1313-14 (11th Cir.2000) (footnotes omitted).
An appellant is not entitled to “perfect representation.” Denton v. State, 945 S.W.2d 793, 796 (Tenn.Crim.App.1996). “[I]n considering claims of ineffective assistance of counsel, ‘we address not what is prudent or appropriate, but only what is constitutionally compelled.’ ” Burger v. Kemp, 483 U.S. 776, 794, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987).
A.
Washington first contends that counsel was ineffective in the preparation of the mitigation evidence and that the circuit court erred in denying relief on this claim. He makes several different arguments in support of this claim.
1.
First, Washington argues that the circuit court erred in finding that counsel’s performance was reasonable when counsel relied on an investigator to conduct the mitigation investigation and to interview witnesses.
“While counsel has a duty to investigate in an attempt to locate evidence favorable to the defendant, ‘this duty only requires a reasonable investigation.’ Singleton v. Thigpen, 847 F.2d 668, 669 (11th Cir.(Ala.) 1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 822, 102 L.Ed.2d 812 (1989) (emphasis added). See Strickland, 466 U.S. at 691, 104 S.Ct. at 2066; Morrison v. State, 551 So.2d 435 (Ala.Cr.App.1989), cert. denied, 495 U.S. *41 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990). Counsel’s obligation is to conduct a ‘substantial investigation into each of the plausible lines of defense.’ Strickland, 466 U.S. at 681, 104 S.Ct. at 2061 (emphasis added). ‘A substantial investigation is just what the term implies; it does not demand that counsel discover every shred of evidence but that a reasonable inquiry into all plausible defenses be made.’ Id., 466 U.S. at 686, 104 S.Ct. at 2063.
“ ‘The reasonableness of counsel’s actions may be determined or substantially influenced by the defendant’s own statements or actions. Counsel’s actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.’ ”
Jones v. State, 753 So.2d 1174, 1191 (Ala.Crim.App.1999).
“ ‘[T]he scope of the duty to investigate mitigation evidence is substantially affected by the defendant’s actions, statements, and instructions. As the Supreme Court explained in Strickland, the issue of what investigation decisions are reasonable “depends critically” on the defendant’s instructions.... ’ Cummings v. Secretary, Dep’t of Corr., 588 F.3d 1331, 1357 (11th Cir.2009).’ Cummings v. Secretary, Dep’t of Corr., 588 F.3d 1331, 1357 (11th Cir.2009).”
James v. State, 61 So.3d 357, 364 (Ala.Crim.App.2010).
In Hall v. State, 979 So.2d 125 (Ala.Crim.App.2007), this Court found that Hall was not deprived of the effective assistance of counsel when counsel delegated the responsibility for investigating the case to a subordinate. We stated:
“ ‘[I]t is neither unprofessional nor unreasonable for a lawyer to use surrogates to investigate and interview potential witnesses rather than doing so personally. See Harris v. Dugger, 874 F.2d 756, 762 & n. 8 (11th Cir.1989). In fact, we have criticized counsel in other cases for failing to utilize subordinates to conduct pretrial investigation. See Henderson v. Sargent, 926 F.2d 706, 714 (8th Cir.1991).’
“Walls v. Bowersox, 151 F.3d 827, 834 n. 4 (8th Cir.1998). See also Callahan v. State, 24 S.W.3d 483, 486 (Tex.Ct.App.2000) (holding that ‘[a] defense attorney is not required to investigate the facts of a case personally. Counsel may delegate the investigation to a private investigator’). Finally, when discussing the duty to investigate mitigating evidence in Rompilla [v. Beard, 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005)], Wiggins [v. Smith, 539 U.S. 510 (2003) ], and Williams [v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ], the Supreme Court did not expressly or impliedly hold that counsel must perform the actual investigation. Therefore, we conclude that the appellant’s trial attorneys did not render ineffective assistance when they relied on subordinates to conduct most of the mitigation investigation, communicated with them during the investigation, and made the ultimate decision about what mitigation evidence to present.”
979 So.2d at 163. Other courts have noted that it is a reasonable practice for defense counsel in a capital-murder ease to hire an investigator. See United States v. Weaver, 882 F.2d 1128, 1138 (7th Cir.1989) (“If defense counsel is unable to personally complete these tasks, then counsel must seek the aid of others, including experts and investigators, to assist in the preparation and investigation.”); Jones v. United *42 States, (No. 4:11CV00702ERW, November 16, 2011) (E.D.Mo.2011) (not reported in F.Supp.2d) (counsel’s decision to rely on the investigator’s file was not unreasonable); Cator v. Warden, (No. CV010810396, February 25, 2004) (Conn.Super.Ct.2004) (not reported in A.2d) (“There is nothing in the law that mandates an attorney to individually interview all potential witnesses and he or she may rely upon the services of a properly designated assistant, such as an investigator, to do so.”). Cf. Davis v. State, 928 So.2d 1089, 1117 (Fla.2005) (“Trial counsel is not absolutely required to hire an investigator under all circumstances. Trial counsel is only required to conduct a reasonable investigation.”).
In fact, the American Bar Association’s Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (2003 ed.) (“ABA Guidelines”) recognize as appropriate the hiring of an investigator to conduct interviews on behalf of appointed counsel. See ABA Guidelines 10.7 & Commentary.
Counsel’s reliance on the mitigation expert was reasonable. The circuit court did not abuse its discretion in denying relief on this claim.
2.
Washington next argues that his counsel’s preparation for the penalty phase of Washington’s trial was inadequate and deprived him of the effective assistance of counsel.[2] The circuit court found that counsel’s investigation was reasonable.
The trial record shows that counsel moved for expenses for an investigator so that he could hire Larry Miller, a retired ABI agent, and that that motion was granted by the court. (Trial C.R. 103.)[3] Counsel also moved for a mental evaluation to examine Washington’s mental condition at the time of the offense and to determine his ability to assist his lawyer in his defense. (Trial C.R. 13.) That motion was also granted and Washington was sent to Taylor Hardin Secure Medical Facility for a mental evaluation. (Trial C.R. 15.) Washington also filed an ex parte motion for funds to secure an expert psychologist, Dr. Karen Salekin, to assist in the mitigation investigation. (Trial C.R. 141.) That motion was also granted. (Trial C.R. 148.) The mental-health report completed by doctors at Taylor Hardin Secure Medical facility stated that there did not appear to be any mental illness involved in the offense and that Washington understood the charges against him. Dr. Salekin’s report shows that she spoke with Washington, Washington’s mother, his half sister, his brother, a former employer, a former coworker, and a customer of Washington’s former employer. She also consulted the evaluation completed at Taylor Hardin Secure Medical Facility and Washington’s criminal records, and she conducted several psychological tests on Washington. Dr. Salekin stated in her report that her investigation revealed that Washington had been charged with seven offenses as an adult — burglary, grand larceny, assault, assault and menacing, unauthorized use of a vehicle, and possession of a controlled substance. Washington was described as aggressive, and he frequently threatened the lives of his coworkers. Washington and his mother told Dr. Salekin that he had no history of mental-health problems and that only one relative, his stepbrother, had a mental-health problem.
*43 Wayne Perdue testified that he was appointed to represent Washington with co-counsel, Kendrick James. James, he said, hired an investigator and a mitigation expert for Washington’s case and James dealt with the mitigation expert. Perdue said that Washington was not very communicative and, in fact, had given them false leads that had resulted in wasted time. They relied on the reports prepared by James’s investigator and his mitigation expert, Perdue said. A mental evaluation of Washington was conducted before trial, Perdue said, and the report showed that Washington had no mental-health problem.
James testified that he hired the mitigation investigator and that he relied on her to do the investigation. James testified that his contact person for Washington’s family was Washington’s sister, Patricia Glenn, because she knew how to contact Washington’s family members. He talked to several other family members, he said, but he could not remember their names. On cross-examination, James testified that he met with Washington many times before trial, that Washington maintained his innocence, that Washington gave them false leads that consumed a good deal of their time, that the investigation showed that Washington was a violent individual, and that he examined the report prepared by the mitigation expert and the report completed as a result of Washington’s pretrial mental evaluation. Dr. Salekin informed him that her testimony would be more harmful than helpful, James said. Last, James said that in his dealings with Washington he saw no sign of any mental-health problems. Counsel was aware of one relative of Washington who had mental problems.
“Counsel have a duty to investigate but this duty is confined to reasonable investigation. See Strickland [v. Washington ], 466 U.S. [668] at 691, 104 S.Ct. at 2066 [ (1984) ]. In Funchess v. Wainwright, 772 F.2d 683, 689 (11th Cir.1985), this Court found counsel reasonably investigated despite the fact that he had not investigated his client’s psychological problems because the client never told him of any problems and the competency evaluation did not suggest any problems existed. The client also acted competently while assisting counsel in preparing his case. See id. Thus the court held that counsel was not put on notice of any problems and could not be faulted for not pursuing the matter. See id.; cf. Collins v. Francis, 728 F.2d 1322, 1349 (11th Cir.1984) (determining that counsel who failed to investigate witnesses that the defendant did not tell him about was not ineffective).
“Reliance upon some family members[’] statements that other mitigation witnesses did not exist was considered permissible in Singleton v. Thigpen, 847 F.2d 668, 670 (11th Cir.1988). Rejecting a per se rule of ineffective assistance where counsel does not consult family members, we held in Williams v. Head, 185 F.3d 1223, 1237 (11th Cir.1999), that counsel’s investigation was reasonable when he did not interview the defendant’s sister or father, the latter because the defendant had not lived with him for very long. ‘[Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make a reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary.’ Strickland, 466 U.S. at 690-91, 104 S.Ct. at 2066.”
Holladay v. Haley, 209 F.3d 1243, 1251-52 (11th Cir.2000). See also Davis v. State, 9 So.3d 539 (Ala.Crim.App.2008).
*44 ‘“The reasonableness of counsel’s investigation and preparation for the penalty phase, of course, often depends critically upon the information supplied by the defendant. E.g. Commonwealth v. Uderra, 550 Pa. 389, 706 A.2d 334, 340-41 (1998) (collecting cases). Counsel cannot be found ineffective for failing to introduce information uniquely within the knowledge of the defendant and his family which is not provided to counsel.’ ”
Waldrop v. State, 987 So.2d 1186, 1195 (Ala.Crim.App.2007) (quoting Commonwealth v. Bond, 572 Pa. 588, 609-10, 819 A.2d 33, 45-46 (2002)).
“In assessing counsel’s investigation, we must conduct an objective review of their performance, measured for ‘reasonableness under prevailing professional norms,’ which includes a context-dependent consideration of the challenged conduct as seen ‘from counsel’s perspective at the time.’ ”
Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).
Counsel’s investigation in this case was reasonable, and the circuit court did not abuse its discretion in denying relief on this claim.
3.
Washington next argues that the evidence presented at the Rule 32 hearing showed that counsel failed to interview witnesses and that the circuit court erroneously held that the burden was on the family members to contact counsel.
The circuit court stated the following in regard to this claim:
“Mr. Perdue placed before the jury evidence of Washington’s positive employment history and his love and concern for members of his family. Further, even though there might have been additional family members who could have testified to these same things during the penalty phase of Washington’s trial, these witnesses were either not revealed to defense counsel by Mr. Washington or those witnesses had ample opportunity to come forward and offer their testimony but, for whatever reason, declined to do so.”
(C.R. 1271.) The circuit court did not hold that the burden was on Washington’s family members to contact counsel.
At the evidentiary hearing the evidence showed that counsel contacted numerous family members and requested that they attend Washington’s trial. A few of Washington’s family members in fact came to the trial. Counsel contacted Washington’s sister, Patricia Glenn, and other family members. Dr. Salekin indicated in her report that she spoke to Washington’s mother, Washington’s sister, his brother, a former employer, a former coworker, and the victims’ son.[4]
The circuit court did not abuse its discretion in denying relief on this claim.
4.
Washington next asserts that the circuit court overlooked the fact that counsel failed to furnish Dr. Salekin with certain records that she had requested to conduct her evaluation. Specifically, he asserts that counsel failed to furnish Dr. Salekin with school records and mental-health records.
In its order, the circuit court stated the following concerning this claim:
“Dr. Salekin was retained by trial attorney Kenny James to perform a miti *45 gation evaluation on [Washington’s] behalf. Although she testified at the hearing that her report was incomplete, she did not relay any such thing to Mr. James at the time she prepared it. She worked on this report for approximately two and one-half months and consulted with [Washington], his mother, his half-sister, his brother, one of [Washington’s] former employers, a former coworker, a previous customer, and one of his attorneys, Mr. James. She noted in her report that there were other people whom she attempted to contact but was unable to. She also noted that she had requested school and mental health records and was unable to secure those documents as well. Even during this most recent proceeding, the Court notes that mental health records were still not delivered, even pursuant to this Court’s order, until the morning of December 11, 2007, just prior to the evidentiary hearing in his case.”
(C.R. 1265-66.)
Dr. Salekin specifically stated in her report that she had requested certain records but did not receive those documents. However, she stated: “Records pertaining to school involvement, medical/mental health, and employment history could not be obtained and as such, information pertaining to these issues was provided by self-report or discussions with collateral contacts.” (C.R. 936.)
Moreover, Washington was 55 years of age when he committed the murders. We question, as have other courts, the mitigation value of evidence of school records and childhood experiences when a defendant is 55 at the time of the offense. As the United States Court of Appeals for the Eleventh Circuit has stated:
“[T]rial counsel’s decision not to investigate and present evidence regarding Francis’s family background does not amount to deficient assistance. Under certain circumstances, trial counsel’s decision not to investigate family childhood background may legitimately be the product of a reasoned tactical choice. See Stanley v. Zant, 697 F.2d 955, 970 (11th Cir.1983), cert. denied, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984). Given the particular circumstances of this case including, among other things, the fact that Francis was thirty-one years old when he murdered Titus Waters, evidence of a deprived and abusive childhood is entitled to little, if any, mitigating weight. See Francois v. Wainwright, 763 F.2d 1188, 1191 (11th Cir.1985). Consequently, trial counsel cannot be faulted for expending his limited time and resources on other vital areas.”
Francis v. Dugger, 908 F.2d 696, 703 (11th Cir.1990). See also Grayson v. Thompson, 257 F.3d 1194, 1227 (11th Cir.2001) (“The fact that Grayson was the only child to commit such a heinous crime also may have undermined defense efforts to use his childhood in mitigation.”); Mills v. Singletary, 63 F.3d 999, 1025 (11th Cir.1995) (“[E]videnee of Mills’ childhood environment likely would have carried little weight in light of the fact that Mills was twenty-six when he committed the crime.”); Bolender v. Singletary, 16 F.3d 1547, 1561 (11th Cir.1994) (“Bolender was twenty-seven years old at the time of the murders, ‘evidence of a deprived and abusive childhood is entitled to little, if any mitigating weight’ when compared to the aggravating factors.”).
Furthermore, Washington was mentally evaluated before his trial, and Dr. Salekin had access to that report. Washington was not prejudiced by counsel’s failure to furnish Dr. Salekin with school and mental-health records, and the circuit court did *46 not abuse its discretion in denying this claim.
5.
Washington next asserts that the circuit court erred in “erroneously disregarding Washington’s mental disorders.” Specifically, he cites the diagnosis by Dr. Robert Shaffer, Washington’s psychologist, that Washington has a brain impairment, and he argues that the circuit court erred in disregarding Dr. Shaffer’s testimony because, Washington says, that testimony was credible. He also questions the circuit court’s references in its order to its personal observations of Washington’s conduct throughout the trial proceedings.
The circuit court stated the following concerning the mental-health testimony:
“Dr. Robert Shaffer, a clinical psychologist, did an extensive evaluation on [Washington], Dr. Shaffer opined that Mr. Washington has a brain impairment. He diagnosed Mr. Washington as having a bipolar 2 disorder. Dr. Shaffer seemed to put a great deal of weight on the fact, if it is a fact, that Mr. Washington has other relatives who suffer from mental disorders. He attributes some of Mr. Washington’s problems to his being raised in poverty and having to quit school and begin work at a young age. He also bases a lot of his findings on Mr. Washington’s self-report of having consumed moonshine over the years. His test results indicated that Washington has an IQ of 83.
“The State’s expert, Dr. Glen King, testified that Mr. Washington does not suffer from any brain or neurological impairment, nor does he suffer from any cognitive deficit other than low intelligence. Dr. King tested and established Mr. Washington’s IQ at 85. Further, he testified that Mr. Washington does not have a bipolar 2 disorder nor does the fact that he may have family members who suffer from mental disease or problems have any relevance on any diagnosis of Mr. Washington.
“With regard to whether Mr. Washington suffers from any mental illness, it is important to note that this Court has had a substantial amount of interaction with Mr. Washington as well. This Court has been around Mr. Washington a number of times over the years. I have observed him and explained different things to him over the course of these proceedings. I have not noticed anything that would indicate to me that he suffers from any mental disease or defect. He has always presented himself as compliant and cooperative and has never created any problems for this Court. Specifically, the undersigned has had contact with [Washington] at hearings which took place on May 14, 2003; August 9, 2003; September 26, 2003; January 12, 2004; January 13, 2004; January 14, 2004; January 15, 2004; March 15, 2004; June 25, 2007; December 11, 2007; and December 12, 2007.
“Further this Court has had the privilege of serving on the bench for over 21 years. I have tried many cases, criminal and otherwise. I have ordered countless mental evaluations and have observed a number of people who have suffered from mental illness as well. There is no indication to me that Mr. Washington has suffered or is suffering from a mental illness such that it would have been relevant mitigation evidence to be offered during the trial of this case.”
(C.R. 1266-67.)
The circuit court resolved the factual dispute among the two mental-health experts based, in part, on its personal observations of Washington.
*47 “The resolution of this factual issue required the trial judge to weigh the credibility of the witnesses. His determination is entitled to great weight on appeal. State v. Klar, 400 So.2d 610, 613 (La.1981). ‘When there is conflicting testimony as to a factual matter such as this, the question of the credibility of the witnesses is within the sound discretion of the trier of fact. His factual determinations are entitled to great weight and will not be disturbed unless clearly contrary to the evidence.’ Klar, 400 So.2d at 613.”
Calhoun v. State, 460 So.2d 268, 269-70 (Ala.Crim.App.1984). See also Brooks v. State, 929 So.2d 491, 496 (Ala.Crim.App.2005); State v. Cortner, 893 So.2d 1264 (Ala.Crim.App.2004). “A trial court’s ruling on conflicting evidence will not be disturbed unless it is palpably contrary to the weight of the evidence.” State v. Cortner, 893 So.2d at 1267-68. “When considering a claim of ineffective assistance, the trial court, not this Court, is the judge of witness credibility, and ‘a trial court’s denial of an ineffectiveness claim based on conflicting evidence is not clearly erroneous.’ ” Wallin v. State, 285 Ga.App. 377, 381, 646 S.E.2d 484, 488 (2007).
By necessity, a trial court may rely, in part, on its own observations of the defendant when assessing mental-health issues. See Bryson v. Ward, 187 F.3d 1193, 1201 (10th Cir.1999) (“A trial court may rely on its own observations of the defendant’s comportment.”); Bishop v. Superior Court, 150 Ariz. 404, 409, 724 P.2d 23, 28 (1986) (“On questions of competency to stand trial, not only is the judge a finder of fact, he is also a de facto witness who may take into consideration his own observations of the defendant.”); People v. Tortorici, 671 N.Y.S.2d 162, 164, 249 A.D.2d 588, 589 (1998) (“In [assessing the competency of the defendant] County Court must take into consideration available expert medical proof ‘coupled with all other evidence and [its] own observations of the defendant.’ ”); State v. Weber, 146 Wis.2d 817, 828, 433 N.W.2d 583, 587 (1988) (“A trial court is entitled to conclude that there is no reason to doubt defendant’s competency to proceed based in part upon its firsthand observations of the defendant.”).
In this case, the experienced circuit judge had had many opportunities to observe Washington, and the circuit judge properly used his observations of Washington to weigh and evaluate the conflicting testimony of the experts. The circuit court did not abuse its discretion in its resolution of the conflicting evidence presented by the experts.
6.
Washington next argues that his family history of mental illness is a mitigating circumstance and that the circuit court erred in ignoring this evidence. Specifically, he asserts that the circuit court erred in concluding that having family members with a mental illness “has no relevance on any diagnosis of Mr. Washington.” (Washington’s brief, p. 32.)
As noted above, the circuit court stated the following concerning this claim:
“The State’s expert, Dr. Glen King, testified that Mr. Washington does not suffer from any brain or neurological impairment, nor does he suffer from any cognitive deficit other than low intelligence. Dr. King tested and established Mr. Washington’s IQ at 85. Further, he testified that Mr. Washington does not have a bipolar 2 disorder nor does the fact that he may have family members who suffer from mental disease or problems have any relevance on any diagnosis of Mr. Washington.”
(C.R. 1267.)
Thus, the record does not support Washington’s claim that the circuit court *48 ignored the evidence. Rather, the circuit court’s findings on this issue were based on the evidence presented, particularly the testimony of Dr. King.
B.
Washington next argues that counsel was ineffective for failing to present available mitigation evidence. Specifically, he asserts that counsel failed to present evidence concerning his mental disorder, his minimal schooling, his poverty-stricken background, his stepfather’s alcoholism, and his father’s death when he was a boy.
The circuit court stated the following concerning this claim:
“The Court finds that [Washington’s] counsel were not ineffective with regard to the preparation of a mitigation case before the penalty phase. The facts establish that Mr. James retained Dr. Sa-lekin to prepare a mitigation report. After reviewing Dr. Salekin’s report Mr. James and Mr. Perdue made the tactical and strategic decision not to call her as a witness. Mr. Washington’s employment history, educational background and medical history has not revealed a great deal of relevant mitigation evidence. This is true, even with the passage of time and the expenditure of substantial resources on his behalf by his new attorneys. Mr. Perdue placed before the jury evidence of Washington’s positive employment history and his love and concern for members of his family. Further, even though there might have been additional family members who could have testified to these same things during the penalty phase of Washington’s trial, these witnesses were either not revealed to defense counsel by Mr. Washington or those witnesses had ample opportunity to come forward and offer their testimony but, for whatever reason declined to do so.
“The Court finds that trial counsel did not fail to present readily available mitigation evidence to the jury nor were they ineffective in the evidence that they presented. Although [Washington’s] counsel argued that trial counsel failed to present a wealth of available mitigation evidence, the facts and testimony did not bear this out. Testimony from other family members, in addition to those family members who were called to testify, would only have been cumulative to what those who testified had to say.
“The fact, if it be a fact, that [Washington] has family members who suffer from mental illness, has no relationship to the conduct of Mr. Washington. The fact that Mr. Washington dropped out of school after the sixth grade and went to work in no way justifies the killing of two people. Neither does Mr. Washington’s abuse of alcohol and illegal drugs.
“If trial counsel had called Mr. Washington’s employer, Billy Whitehurst, then the jury would have heard about Mr. Washington making threats to co-employees as' well as hearing about his positive ability to work. If trial counsel had called Dr. Salekin to testify, the jury would have heard of the negative things that she discovered as well as the positive. If Dr. Shaffer had offered his opinion to the jury that Mr. Washington suffered from brain impairment, the State could have reasonably called Dr. King or even Dr. Kirkland to testify that he did not.
“Even assuming, that trial counsel had found and presented a witness that would have testified at trial in the manner that Dr. Shaffer did at the evidentia-ry hearing, the Court finds that there is no reasonable probability that the bal- *49 anee of aggravating and mitigating circumstances that led to the imposition of the death penalty in this case would have been different. In light of Mr. Washington’s brutal attack upon and murder of an elderly couple, whom he worked for for years, the Court finds no reasonable probability that the presentation of such psychological evidence such as [that] presented at Washington’s evi-dentiary hearing would have changed the jury’s recommendation. Further, the presentation of such evidence would not have altered this Court’s findings that the aggravating circumstances outweigh the mitigating circumstances.”
(R. 1270-73.)
At the postconviction evidentiary hearing Washington presented the testimony of his trial attorneys, the mitigation specialist that counsel hired, his mother, two of his sisters, his nephew, a former neighbor, and a clinical psychologist. This testimony is summarized below.
Attorneys: Wayne Perdue testified that he was appointed to represent Washington, that he had been practicing law since 1976, and that 90 percent of his cases were criminal cases. Perdue said that he and cocounsel, Kendrick James, hired an investigator and a mitigation expert for Washington’s case and that James dealt with the mitigation expert. Perdue said that Washington was not very communicative and, in fact, had given them false leads which wasted their time. He relied on the reports prepared by his investigator and his mitigation expert. A mental evaluation of Washington was conducted before trial, Perdue said, but the report showed that Washington had no mental-health problem.
Kendrick James testified that he was also appointed to represent Washington and that he and Perdue divided the work on the case. He hired the mitigation investigator, he said, and he relied on her to do the investigation. James testified that his contact person for Washington’s family was Washington’s sister, Patricia Glenn, because she knew how to contact Washington’s other family members. He talked to several other family members, he said, but he could not remember their names. On cross-examination, James testified that he met with Washington many times before trial, that Washington maintained his innocence, that Washington gave them false leads that consumed a good deal of their time, that the investigation showed that Washington was a violent individual, and that he read the report prepared by the mitigation expert and the report completed as a result of Washington’s pretrial mental evaluation. James testified:
“[Dr. Salekin] told me that she could offer nothing by way of troubled childhood, drug addiction, you know, anything of that nature that would have assisted us in showing that Charlie was not responsible for his actions. She could offer me nothing in the way of mitigation, I suppose, is what she basically said. She wasn’t going to be any help to me because there were no psychological issues, no mental health issues, no drug addiction issues, nothing that would have helped us in mitigation.”
(R. 281-82.) Dr. Salekin also informed him that her testimony would be more harmful than helpful, James said. Last, James said that in his dealings with Washington he saw no sign of any mental-health problems and that Dr. Salekin did not tell him that her report was not complete.
Mitigation expert: Dr. Karen Salekin, a psychologist, testified that she was retained by James to conduct a mitigation investigation and an evaluation on Washington. She prepared a report of that investigation for trial counsel. Dr. Salekin testified that she requested certain records and was unable to obtain them and that *50 she felt her evaluation was not complete. On cross-examination, Dr. Salekin testified that the report she prepared did not state that her evaluation was incomplete; that she interviewed Washington, his mother, his sister, his brother, a former employer, and a former coworker; and that she spoke with the victims’ son. Dr. Salekin indicated that she had requested school, medical, and mental-health records but that she was able to secure a good deal of the information that would have been in those records from Washington and “collateral contacts.” (R. 229.) Dr. Salekin also testified that in her report she wrote: “[Tjhere are no overt signs of any disturbance of mental thought or orientation.” (R. 245.) She discovered that Washington was violent at work, that he had six children with whom he did not maintain contact, that he had been married three times and had cheated on all three spouses, that he used cocaine about once a month, and that he had a supportive family.
Family members: Annie Mae Washington, Washington’s mother, testified that Washington was 1 of her 11 children, that he was a well behaved child, that he worked and helped the family, that he took care of his younger siblings, and that Washington was a good son who visited her often. On cross-examination, she testified that Washington was never physically abused by his stepfather and that she has a son who was diagnosed with a mental illness.
Patricia Glenn testified that she is Washington’s younger sister, that two of her siblings were dead, that their family was poor and had no indoor plumbing, and that one of her brothers is in a mental institution. Michael Turner, Washington’s nephew, testified that he has been diagnosed as a schizophrenic, that Washington helped raise him and was like a father to him, and that after Washington’s brother died Washington was depressed. Linda Turner, Washington’s younger sister, testified that her father and Washington’s stepfather died from cirrhosis of the liver, that Washington was addicted to drugs, that she was diagnosed as a schizophrenic at the age of 26, that she takes medication for her condition, and that one of Washington’s sons has a mental problem.
Friend: Debbie Jackson testified that she lived next door to Washington’s mother and had known Washington and his family for about nine years. She said that Washington took drugs and drank and that he helped support his siblings.
Mental-health expert: Dr. Robert Shaffer, a clinical psychologist, testified that he conducted a psychological evaluation of Washington. Dr. Shaffer said that he interviewed Washington’s family members, that he reviewed Washington’s history and that he evaluated his medical records. It was his opinion that Washington has a “brain impairment” or deficiencies in his neuropsychological functioning. (R. 423.) He further determined that Washington was bipolar and that he had a substance-dependency disorder.
The State also presented the testimony of one of Washington’s former employers and a mental-health expert.
Former Employer: Billie Whitehurst, one of Washington’s former employers, testified that Washington worked for him in construction for six or seven years, that he was a good employee, that several of his coworkers did not like to work with Washington, and that he worked best when he was by himself.
Mental-health expert: Dr. Glen D. King, a clinical and forensic psychologist, testified that he evaluated Washington and performed intelligence tests on him. He determined that Washington’s full-scale IQ was between 80 and 85. He testified that *51 he did not agree with Dr. Shaffer’s diagnosis because, he said, Dr. Shaffer failed to administer “at least two of the subtests necessary to compute that impairment index.” (R. 515.) He testified:
“My opinion is that Mr. Washington does not have any brain impairment other than that which you might associate with an IQ level of somewhere between 80 and 85. I don’t consider that impairment. I think those are just individual differences and people differ in terms of their intellectual ability. I don’t think that it’s appropriate to diagnose brain impairment when there are no external indications for that in the medical records or any event that has ever occurred for him.
“... In my opinion, he does not now have, he has never had, and will not have bipolar disorder. That is a serious mental illness that would be observable in the courtroom. He doesn’t take any medications for treatment of mental disorders, never has; never been hospitalized for any mental disorder. I saw no evidence in any hospital record that he’s ever [been] seen as having any kind of mental disorder by any other professional. He was interviewed by two or three other psychologists, they never found any evidence for any bipolar disorder. And it simply is not present.”
(R. 519-20.)
“[O]ur principal concern ... is not whether counsel should have presented a mitigation case. Rather, we focus on whether the investigation supporting counsel’s decision not to introduce mitigating evidence [of the defendant’s] background was itself reasonable.” Wiggins v. Smith, 539 U.S. 510, 523, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). “When counsel performed an adequate mitigation investigation, we accord counsel’s strategic trial decisions ‘a heavy measure of deference.’ ” Matthews v. Parker, 651 F.3d 489, 519 (6th Cir.2011).
At the sentencing hearing, counsel presented the testimony of two of Washington’s sisters — Linda Hunt and Patricia Glenn. Hunt testified that Washington was her older brother, that her mother had had 11 children, that the family was close, that Washington is a good brother, that Washington frequently helped his siblings, and that Washington was like a father to her son. Glenn testified that Washington was her older brother, that Washington was a loving brother, that her family was a close family, and that when she was recently in the hospital Washington called or visited her every day. She said that the other siblings were not at trial because one lived in Detroit and the others were working, in closing, counsel urged the jury not to let emotions control its verdict and pleaded with the jury to spare Washington’s life.
First, counsel was not questioned at the postconviction evidentiary hearing as to why he presented the testimony that he did in mitigation and why he proceeded as he did in the case.
“ ‘An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption [of effective representation], Therefore “where the record is incomplete or unclear about [counsel]’s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment.” ’ Chandler v. United States, 218 F.3d 1305, 1314 n. 15 (11th Cir.2000) (en banc) (quoting Williams v. Head, 185 F.3d 1223, 1228 (11th Cir.1999)).”
Grayson, 257 F.3d at 1218. Thus, because we have found that counsel’s investigation was reasonable, we presume that counsel’s performance was within the wide range of constitutionally mandated counsel.
*52 Second, Washington and his mother told counsel that he had one stepbrother who had a mental illness and that Washington had no mental problems.
“The reasonableness of counsel’s actions may be determined or substantially influenced by the defendant’s own statements or actions. Counsel’s actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.”
Strickland, 466 U.S. at 691.
Third, introducing more evidence concerning Washington’s life would have opened the door to negative evidence. As noted above, Washington had six children, but he did not maintain contact with them; he had been married three times and had cheated on all three spouses; and he had a long work history but was described as violent at work and had frequently threatened his coworkers.
“While the failure to introduce any mitigation evidence may support a claim of ineffective assistance of counsel, such a decision is reasonable where evidence may open the door to damaging rebuttal evidence. [In re Personal Restraint of] Stenson, 142 Wash.2d [710] at 744, 16 P.3d 1 [2001] (citing Mak [v. Blodgett, 970 F.2d 614 (9th Cir.1992) ]; Strickland [v. Washington ], 466 U.S. [668] at 700, 104 S.Ct. 2052 [ (1984) ] (no prejudice where proffered evidence would have opened the door to harmful and conflicting evidence.)).”
In re Elmore, 162 Wash.2d 236, 263, 172 P.3d 335, 349 (2007).
Fourth, some of the evidence introduced at the postconviction evidentia-ry hearing was cumulative to evidence that was presented at the penalty phase of Washington’s trial.
“ ‘ “[T]he failure to present additional mitigating evidence that is merely cumulative of that already presented does not rise to the level of a constitutional violation.” Nields v. Bradshaw, 482 F.3d 442, 454 (6th Cir.2007) (quoting Broom v. Mitchell, 441 F.3d 392, 410 (6th Cir.2006)).’ Eley v. Bagley, 604 F.3d 958, 968 (6th Cir.2010). ‘This Court has previously refused to allow the omission of cumulative testimony to amount to ineffective assistance of counsel.’ United States v. Harris, 408 F.3d 186, 191 (5th Cir.2005). ‘Although as an afterthought this [defendant’s father] provided a more detailed account with regard to the abuse, this Court has held that even if alternate witnesses could provide more detailed testimony, trial counsel is not ineffective for failing to present cumulative evidence.’ Darling v. State, 966 So.2d 366, 377 (Fla.2007).”
Daniel v. State, 86 So.3d 405, 429-30 Ala.Crim.App.2011).
“ ‘ “[T]he selection of witnesses and the introduction of evidence are questions of trial strategy and virtually unchallengeable.” ’ Johnson v. State, 333 S.W.3d 459, 463-64 (Mo. banc 2011) (citation omitted). Trial counsel will not be found ineffective for failing to present cumulative evidence.”
Roberts v. State, 356 S.W.3d 196, 202-03 (Mo.Ct.App.2011). See also Card v. State, 497 So.2d 1169, 1177 (Fla.1986) (“[W]e refuse to render counsel ineffective for failing to proffer testimony that would have been entirely cumulative.”). “Evidence of a defendant’s drug addiction to a jury is often a ‘two-edged sword’: while providing a mitigating factor, such details may alienate the jury and offer little reason to lessen the sentence.” Pace v. McNeil, 556 F.3d 1211, 1224 (11th Cir.2009).
*53 “ ‘Trial counsel is not deficient for failing to present additional testimony that would have informed the jury of negative information about the defendant.’ Windom v. State, 886 So.2d 915, 923 (Fla.2004) (citing Breedlove v. State, 692 So.2d 874, 878 (Fla.1997)). Additionally, trial counsel will not be found to have rendered deficient performance when trial counsel made a reasonable, strategic decision to not present mitigation testimony during the penalty phase that could open the door to other damaging testimony. See Davis v. State, 990 So.2d 459, 472 (Fla.2008) (quoting Gaskin v. State, 822 So.2d 1243, 1248 (Fla.2002)).”
Lukehart v. State, 70 So.3d 503, 513-14 (Fla.2011). “An ineffective assistance claim does not arise from the failure to present mitigation evidence where that evidence presents a double-edged sword.” Reed v. State, 875 So.2d 415, 437 (Fla.2004). “Trial counsel will not be held to be deficient when she makes a reasonable strategic decision to not present mental mitigation testimony during the penalty phase because it could open the door to other damaging testimony.” Johnston v. State, 63 So.3d 730, 741 (Fla.2011).
Furthermore, the same judge who presided over Washington’s capital-murder trial also considered his postconviction petition. In the postconviction proceedings, the circuit court found that the allegedly omitted mitigation evidence would not have affected his decision that the aggravating circumstances outweighed the mitigating circumstances and mandated a death sentence. We afford the experienced judge’s ruling “considerable weight.” See State v. Gamble, 63 So.3d 707, 721 (Ala.Crim.App.2010).
Moreover, we have conducted our own de novo review and have reweighed the alleged omitted mitigation evidence against the evidence that was presented at Washington’s trial and sentencing hearing. See Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). The circuit court found as aggravating circumstances that: (1) the murders were committed during the course of a robbery; (2) that the murders were committed during the course of a burglary; and (3) that the murders were committed pursuant to one act or one course of conduct. The circuit court found one statutory mitigating circumstance — that Washington had no significant history of prior criminal activity. As nonstatutory mitigating circumstances the circuit court found that Washington’s father died when Washington was three years old and that Washington was raised by his mother; that Washington had a close and loving relationship with his numerous siblings; that Washington had six children and several grandchildren; that Washington dropped out of school when he was in the seventh grade; and that Washington used crack cocaine around the time of the murders. The evidence presented at the postconviction evidentiary hearing was to a great extent cumulative of evidence presented on Washington’s behalf and was entitled to little weight. .We agree with the circuit court that the admission of this evidence would not have changed the verdict in the penalty phase.
Washington has failed to establish that he was prejudiced by the alleged omission of the above mitigating evidence. Thus, Washington has failed to satisfy the Strickland test. The circuit court correctly denied this claim.
II.
Washington next argues that the circuit court erred in not finding that counsel was ineffective in his opening statement in the penalty phase. In his amended petition, Washington pleaded *54 that counsel’s opening statement was confusing, that counsel failed to list the mitigating circumstances that were present, and that counsel failed to have a coherent theme to his argument. Washington further pleaded, in what appears to be an inconsistent position, that “[t]he defense presented evidence of multiple mitigating factors, not just one.” (C.R. 272.)
The circuit court stated the , following regarding this claim:
“The Court finds that Mr. Washington’s trial counsel was not inadequate nor ineffective with regard to the opening statement made before the jury in the sentencing phase of his trial. This Court will not second-guess strategic decisions made by experienced trial counsel. Just because an opening statement is not long or rambling does not make it ineffective. Mr. Perdue urged the jury to consider whether it was necessary to take the life of another person when two lives had already been taken. He reminded the jury that Mr. Washington had no lengthy criminal history. He reminded the jury that [Washington] had a long work history. He also presented to them his position that it was the cocaine and not Mr. Washington’s nature that caused the death of the McKinnons.”
(C.R. 1271.)
In People v. Leeper, 317 Ill.App.3d 475, 251 Ill.Dec. 202, 740 N.E.2d 32 (2000), the Illinois Court of Appeals made the following observations concerning an attorney’s performance during opening statements:
“[Counsel] made only a perfunctory opening statement and closing argument. Counsel is not required by law to make an opening statement at all. Pietsch v. Pietsch, 245 Ill. 454, 456-57, 92 N.E. 325, 326 (1910). [Counsel’s] opening statement was short; however, it explained what [counsel], in his professional judgment, thought was necessary. Specifically, [counsel] explained that the burden of proof was on the State and suggested that the jury listen carefully to both versions of the events. [Counsel’s] closing argument was also short, but in light of the amount of evidence presented, it was satisfactory. Counsel is given great latitude in his or her closing argument to the jury. Black v. Laggren, 313 Ill.App.3d 39, 44, 245 Ill.Dec. 851, 728 N.E.2d 1208, 1213 (2000). [Counsel’s] closing argument again outlined the burden of proof and focused on a close analysis of the jury instructions. The contents of the opening statement and closing argument clearly lie within the professional judgment of counsel and, thus, cannot support a claim of ineffective assistance of counsel.”
317 Ill.App.3d at 484, 251 Ill.Dec. 202, 740 N.E.2d at 40. See also Gregory G. Sarno, Annotation, Adequacy of Defense Counsel’s Representation of Criminal Client Regarding Argument, 6 A.L.R.4th 16 (1981).
“Without some explanation as to why counsel acted as he did, we presume that his actions were the product of an overall strategic plan.” Tong v. State, 25 S.W.3d 707, 714 (Tex.Crim.App.2000). Postconviction counsel failed to question Washington’s trial attorneys concerning their strategy for the opening statement. When the record is silent as to why counsel performed a certain way we must presume that counsel’s actions were reasonable. See Grayson, supra.
Washington also failed to establish how he was prejudiced by counsel’s performance in the opening statement. The circuit court did not abuse its discretion in denying relief on this claim.
III.
Washington next argues that counsel was ineffective in closing argument *55 in the penalty phase because, he says, the argument was brief and rambling.
In closing, counsel responded to the State’s argument, tried to humanize Washington, and argued that the death penalty was not a deterrent and that Washington should be sentenced to life imprisonment without the possibility of parole.
“[B]revity of argument does not show ineffectiveness. Sometimes it is very effective.” Reese v. State, 905 S.W.2d 631, 638 (Tex.App.1995). “Brevity alone does not state a claim of ineffective assistance of counsel.” Flamer v. State, 585 A.2d 736, 757 (Del.1990). “Closing argument is an area where trial strategy is most evident.” Flemming v. State, 949 S.W.2d 876, 881 (Tex.App.1997); “Entirely satisfactory representation may include a brief closing argument intended to focus the jury’s attention on a single item of strategy which counsel deems most likely to achieve a favorable verdict.” State v. Messiah, 538 So.2d 175, 188 (La.1988).
“The effectiveness of an advocate’s oral presentation is difficult to judge accurately from a written transcript, and the length of an argument is not a sound measure of its quality. Although defense counsel’s argument in this case appears to have been somewhat lacking in clarity, not to mention eloquence, we are not persuaded that it fell below the standard of reasonably competent representation or that there is a reasonable probability that a better presentation would have resulted in a more favorable penalty verdict.”
People v. Cudjo, 6 Cal.4th 585, 635, 25 Cal.Rptr.2d 390, 422, 863 P.2d 635, 667 (1993).
At the postconviction evidentiary hearing, Washington failed to question counsel concerning his reasons for presenting the closing argument he presented. Thus, we presume that counsel’s actions were reasonable. See Grayson, 257 F.3d at 1218. Moreover, postconviction counsel failed to establish how Washington was prejudiced by trial counsel’s closing argument. The circuit court did not abuse its discretion in denying relief on this claim.
IV.
Washington argues that he was entitled to a full evidentiary hearing on claims that he asserts were erroneously summarily dismissed before the Rule 32 evidentiary hearing. He raises several different grounds in support of this contention.
“An evidentiary hearing on a [Rule 32] petition is required only if the petition is ‘meritorious on its face.’ Ex parte Boatwright, 471 So.2d 1257 (Ala.1985). A petition is, ‘meritorious on its face’ only if it contains a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the facts relied upon (as opposed to a general statement concerning the nature and effect of those facts) sufficient to show that the petitioner is entitled to relief if those facts are true. Ex parte Boatwright, supra; Ex parte Clisby, 501 So.2d 483 (Ala.1986).”
Moore v. State, 502 So.2d 819, 820 (Ala.1986).
“ ‘ “In some cases, recollection of the events at issue by the judge who presided at the original conviction may enable him summarily to dismiss a motion for postconviction relief.” Little v. State, 426 So.2d 527, 529 (Ala.Cr.App.1983). “If the circuit judge has personal knowledge of the actual facts underlying the allegations in the petition, he may deny the petition without further proceedings so long as he states the reasons for the denial in a written order.” Sheats v. *56 State, 556 So.2d 1094, 1095 (Ala.Cr.App.1989).’ ”
Ray v. State, 646 So.2d 161, 162 (Ala.Crim.App.1994) (quoting Norris v. State, 579 So.2d 34, 35 (Ala.Crim.App.1991) (Bowen, J., dissenting)).
In this case, as we stated above, the same judge who presided over Washington’s capital-murder trial also presided over the postconviction proceedings.
A.
First, Washington asserts that he was entitled to an evidentiary hearing on his claim that the State violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by allegedly failing to disclose exculpatory evidence to him. Specifically, he argues that the State failed to disclose a report completed by the Department of Forensic Sciences stating (1) that no DNA was detected on the hairs collected from Mr. McKinnon’s hand; (2) that the hairs were unsuitable for DNA testing; (3) that there were hairs on Mrs. McKin-non’s robe; and (4) that Agent Lynn Rhodes requested that no DNA testing be done on the hairs collected from Mrs. McKinnon’s robe or from Washington.
In July 2007, the circuit court issued an order dismissing this claim. The order states, in pertinent part:
“This ground is procedurally barred per Rule 32.2(a)(3)[, Ala. R.Crim. P.,] as it could have been but was not raised at trial. This ground is also procedurally barred per Rule 32.2(a)(5)[, Ala. R.Crim. P.,] as it could have been but was not raised on appeal. This claim appears to be brought under Brady v. Maryland, 373 U.S. 83 (1963), which held ‘suppression by prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution.’ Id. at 87. However, if new evidence is alleged in the Rule 32 petition, a petitioner may overcome this bar by showing that there is newly discovered evidence. The standard for post-conviction review of newly discovered evidence is that the ‘newly discovered evidence must not have been known at trial or have been discoverable through the exercise of due diligence, and it must be such that would have probably prevented conviction.’ This must be proven by a preponderance of the evidence. Elliott v. State, 601 So.2d 1118, 1119 (Ala.Crim.App.1992).
“While counsel for [Washington] did allege at the hearing on this Rule 32 petition that they had received a DNA report two weeks prior to the hearing that contained new evidence, this information is not found in [Washington’s] amended Rule 32 petition.”
(C.R. 608.)
In McWhorter v. State, [Ms. CR-09-1129, September 30, 2011] — So.3d — (Ala.Crim.App.2011), we stated:
“A postconviction Brady claim raised in a Rule 32 petition must meet all five prerequisites of ‘newly discovered evidence’ in Rule 32.1(e), Ala. R.Crim. P. Payne v. State, 791 So.2d 383, 398 (Ala.Crim.App.1999). Numerous recent opinions of this Court have held that a petitioner’s Rule 32 Brady claim is procedurally barred if the petitioner fails to plead that his claim is based on newly discovered evidence and could not have been raised at trial or on direct appeal. See, e.g., Bryant v. State, [Ms. CR-08-0405, Feb. 4, 2011] - So.3d - (Ala.Crim.App.2011); Ray [v. State, 80 So.3d 965 (Ala.Crim.App.2011) ]; Davis [v. State, 44 So.3d 1118 (Ala.Crim.App.2009) ]; Windsor [v. State, 89 So.3d 805 (Ala.Crim.App.2009) ]; Beckworth [v. State, [Ms. CR-07-0051, May 1, 2009] *57 — So.3d - (Ala.Crim.App.2009) ]; Smith v. State, 71 So.3d 12 (Ala.Crim.App.2008); Ferguson v. State, 13 So.3d 418, 444-45 (Ala.Crim.App.2008).
[[Image here]]
“McWhorter cites Ex parte Pierce, 851 So.2d 606 (Ala.2000), and McGahee v. State, 885 So.2d 191 (Ala.Crim.App.2003), for the proposition that the newly-discovered-evidenee standard of Rule 32.1(e) does not apply to Rule 32 claims based on alleged violations of the defendant’s constitutional rights. McWhorter’s argument is misplaced because his Brady claim is proeedurally barred. In Pierce, the Alabama Supreme Court held that Rule 32.1(e) did not apply to a juror-misconduct claim because the petitioner’s claim was a constitutional claim under Rule 32.1(a). The Court, however, went on to state that ‘[although Rule 32.1(e) does not preclude Pierce’s claim, Rule 32.2(a)(3) and (5) would preclude Pierce’s claim if it could have been raised at trial or on appeal.’ Pierce, 851 So.2d at 614. The Court stated that Pierce’s claim was barred under Rule 32.2(a)(3) and 32.2(a)(5) unless ‘he established that the information [forming the basis of his claim] was not known, and could not reasonably have been discovered, at trial or in time to raise the issue in a motion for new trial or on appeal.’ Pierce, 851 So.2d at 616. Thus, although McWhorter does not have to prove that his Brady claim is based on ‘newly discovered material facts’ as defined under Rule 32.1(e)(1)-(5), he must still plead facts indicating that his claim could not have been raised at trial or on direct appeal to avoid being proeedurally barred under Rule 32.2(a)(3) and 32.3(a)(5). This requires McWhorter to plead that the State’s alleged concealment of Rice’s statement ‘was not known, and could not reasonably have been discovered, at trial or in time to raise the issue in a motion for new trial or on appeal.’ Pierce, 851 So.2d at 616. See also Hunt [v. State, 940 So.2d 1041 (Ala.Crim.App.2005) ], Boyd v. State, 913 So.2d 1113 (Ala.Crim.App.2003), and Windsor v. State, 89 So.3d 805 (Ala.Crim.App.2009).”
— So.3d at -. This Court has frequently held that Brady claims are procedurally barred in a postconviction proceeding. See Madison v. State, 999 So.2d 561 (Ala.Crim.App.2006); Hyde v. State, 950 So.2d 344 (Ala.Crim.App.2006); Duncan v. State, 925 So.2d 245 (Ala.Crim.App.2005); Barbour v. State, 903 So.2d 858 (Ala.Crim.App.2004).
The circuit court did not abuse its discretion in finding that Washington’s Brady claim was proeedurally barred because he failed to plead that this claim was based on newly discovered evidence.
B.
Washington next argues that the circuit court erred in summarily dismissing his claims related to prosecutorial misconduct because, he says, the prosecutor misstated the law during closing argument and vouched for the credibility of State witnesses.
Prosecutorial misconduct claims are proeedurally barred in postconviction proceedings pursuant to Rules 32.2(a)(3) and (a)(5), Ala. R.Crim. P., because they could have been raised at trial or on appeal but were not. See Burgess v. State, 962 So.2d 272 (Ala.Crim.App.2005); Adkins v. State, 930 So.2d 524 (Ala.Crim.App.2001); Magwood v. State, 689 So.2d 959 (Ala.Crim.App.1996); Baker v. State, 683 So.2d 1 (Ala.Crim.App.1995); Rolling v. State, 673 So.2d 812 (Ala.Crim.App.1995).
*58 The circuit court correctly found that these claims were procedurally barred under Rule 32.2, Ala. R.Crim. P.
C.
Washington next asserts that the circuit court erred in summarily dismissing the bulk of his claims of ineffective assistance of counsel in the guilt phase of the trial because, he says, they were sufficiently pleaded to satisfy the “notice pleading” requirements.
1.
Washington first asserts that the circuit court should have considered the ineffective-assistance-of-counsel claims as a whole and not in a piecemeal fashion when determining whether those claims were due to be summarily dismissed.
In Taylor v. State, [Ms. CR-05-0066, October 1, 2010] — So.3d - (Ala.Crim.App.2010), we addressed a similar claim and stated:
“Taylor ... contends that the allegations offered in support of a claim of ineffective assistance of counsel must be considered cumulatively, and he cites Williams v. Taylor, 529 U.S. 362 (2000). However, this Court has noted: ‘Other states and federal courts are not in agreement as to whether the “cumulative effect” analysis applies to Stride-land claims’; this Court has also stated: ‘We can find no case where Alabama appellate courts have applied the cumulative-effect analysis to claims of ineffective assistance of counsel.’ Brooks v. State, 929 So.2d 491, 514 (Ala.Crim.App.2005), quoted in Scott v. State, [Ms. CR-06-2233, March 26, 2010] — So.3d -, - (Ala.Crim.App.2010); see also McNabb v. State, 991 So.2d 313, 332 (Ala.Crim.App.2007); and Hunt v. State, 940 So.2d 1041, 1071 (Ala.Crim.App.2005). More to the point, however, is the fact that even when a cumulative-effect analysis is considered, only claims that are properly pleaded and not otherwise due to be summarily dismissed are considered in that analysis. A cumulative-effect analysis does not eliminate the pleading requirements established in Rule 32, Ala. R.Crim. P. An analysis of claims of ineffective assistance of counsel, including a cumulative-effect analysis, is performed only on properly pleaded claims that are not summarily dismissed for pleading deficiencies or on procedural grounds. Therefore, even if a cumulative-effect analysis were required by Alabama law, that factor would not eliminate Taylor’s obligation to plead each claim of ineffective assistance of counsel in compliance with the directives of Rule 32.”
— So.3d at -. “[T]he claim of ineffective assistance of counsel is a general allegation that often consists of numerous specific subcategories. Each subcategory is an independent claim that must be sufficiently pleaded.” Coral v. State, 900 So.2d 1274, 1284 (Ala.Crim.App.2004), overruled on other grounds, Ex parte Jenkins, 972 So.2d 159 (Ala.2005).
When considering whether the claims of ineffective assistance of counsel were sufficiently pleaded, the circuit court correctly considered each claim individually.
2.
Next, Washington asserts that his claims of ineffective assistance of counsel were sufficiently pleaded and were erroneously summarily dismissed based on his failure to comply with the pleading requirements of Rule 32.6(b), Ala. R.Crim. P. He argues in brief: “Washington only had to provide adequate notice of what he was alleging so that the State could understand and respond to his allegations.” (Washington’s brief, p. 54.) Washington makes *59 22 different arguments concerning this assertion.
Rule 32.3, Ala. R.Crim. P., addresses the pleading requirements for postconviction petitions:
“The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.”
(Emphasis added.)
In discussing the pleading requirements necessary to satisfy Alabama’s full-fact-pleading requirements as they relate to claims of ineffective assistance of counsel, we have stated:
“To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner not only must ‘identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,’ Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating ‘that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ 466 U.S. at 694, 104 S.Ct. 2052. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient.”
Hyde v. State, 950 So.2d 344, 355-56 (Ala.Crim.App.2006).
Although postconviction proceedings are civil in nature, they are governed by the Alabama Rules of Criminal Procedure. See Rule 32.4, Ala. R.Crim. P. The “notice pleading” requirements relative to civil cases do not apply to Rule 32 proceedings. “Unlike the general requirements related to civil cases, the pleading requirements for postconviction petitions are more stringent....” Daniel v. State, 86 So.3d 405, 410-11 (Ala.Crim.App.2011). Rule 32.6(b), Ala. R.Crim. P., requires that full facts be pleaded in the petition if the petition is to survive summary dismissal. See Daniel, supra. Thus, to satisfy the requirements for pleading as they relate to postconviction petitions, Washington was required to plead full facts to support each individual claim.
a.
Washington contends that the circuit court erred in summarily dismissing his claim that his trial counsel was ineffective for failing to interview the employees of the hotel where he was arrested and the police officers who arrested him.
In dismissing this claim, the circuit court stated:
“[Washington] fails to allege facts that if proven would entitle him to relief.... [Washington] fails to allege exactly how the interviewing of other witnesses would have resulted in a different result for Mr. Washington.
“These arguments also fail due to a lack of specificity pursuant to Rule 32.6(b).”
(C.R. 597.)
A review of Washington’s amended petition shows that he pleaded the names of witnesses he asserts counsel should have interviewed; however, he failed to allege what each witness could have testified to and how he was prejudiced by counsel’s failure to interview that witness. Accordingly, Washington failed to meet his burden of pleading sufficient facts pursuant to Rule 32.6(b), Ala. R.Crim. P.
*60 b.
Washington next asserts that the circuit court erred in summarily dismissing his claim that counsel was ineffective at the guilt phase for failing to interview members of his extended family. The circuit court allowed this claim to proceed as it related to the penalty phase of Washington’s trial.
In regard to this claim, the circuit court held: “This ground fails pursuant to Rule 82.7(d) because no material issue of fact or law exists that would entitled [Washington] to relief, and no purpose would be served by further proceedings.” (C.R. 597.)
In this section of Washington’s amended petition, Washington failed to list by name any family member whom counsel failed to interview, what evidence he or she could have provided, or how he was prejudiced by counsel’s failure to interview that family member for the guilt phase of his capital-murder trial. Thus, the circuit court correctly found that “no purpose would be served by any further proceedings” in regard to this claim.” Rule 32.7(d), Ala. R.Crim. P. See Beckworth v. State, [Ms. CR-07-0051, May 1, 2009] — So.3d — (Ala.Crim.App.2009) (a claim that counsel is ineffective for failing to call witnesses is not sufficiently pleaded if the witness is not identified by name). Therefore, the circuit court did not abuse its discretion in summarily dismissing this claim.
c.
Washington next argues that the circuit court erred in summarily dismissing his claim that counsel was ineffective in the guilt phase because counsel failed to investigate Washington’s mental health.
In dismissing this claim, the circuit court stated:
“This ground fails because it does not contain a clear and specific statement of the grounds upon which relief is sought, and does not include a full disclosure of the factual basis of those grounds pursuant to the requirements of Rule 32.6(b). Further, [Washington] fails to allege specifically from what mental illness Mr. Washington suffers.”
(C.R. 598.) We agree with the circuit court that this claim lacked specificity because Washington failed to plead what mental illness counsel could or would have discovered had counsel investigated his mental health. Rule 32.6(b), Ala. R.Crim. P.
Moreover, the record clearly shows that this claim has no factual basis. Counsel moved for a mental evaluation before trial and was in possession of the report completed by doctors at Taylor Hardin Secure Medical Facility. “[Defense counsel is entitled to rely on the evaluations conducted by qualified mental health experts, even if, in retrospect, those evaluations may not have been as complete as others may desire.” Darling v. State, 966 So.2d 366, 377 (Fla.2007). Also, counsel retained a psychologist to assist in mitigation and an investigator. Counsel had no reason to doubt Washington’s mental health based on counsel’s dealings with Washington. Also, Washington and his mother told counsel that he had no mental illness. Counsel did investigate Washington’s mental health. Therefore, there was “no material issue of fact or law” which would warrant further proceedings in regard to this claim. See Rule 32.7(d), Ala. R.Crim. P. The circuit court correctly summarily dismissed this claim.
d.
Washington next argues that the circuit court erred in summarily dismissing his claim that counsel was ineffective for failing to ensure that he be allowed to view the crime scene after counsel filed a mo *61 tion to view the scene with Washington and the motion was granted.[5]
When dismissing this claim, the circuit court stated:
“This ground fails under Rule 32.6(b) because there is no full factual basis for the grounds for relief. There are no facts specifically alleged that necessitate a crime scene visit, nor how the information gathered from a visit to the crime scene would have brought about evidence that would have changed the outcome of the trial.
“[Washington’s] argument that failing to ensure an actual visit also fails under [Rule] 32.7(d) because it is without merit, because no material issue of fact or law exists which would entitle [Washington] to relief, and no purpose would be served by further proceedings. Even if [Washington] was allowed to visit the crime scene and point out that ‘he knew the McKinnons kept a key to their house on their front porch,’ [Washington] fails to demonstrate how the lack of the visit kept him from telling [his attorneys] these things. Mr. Washington could have explained all of the facts alleged without the visit.”
(C.R. 598.)
In Hyde, 950 So.2d 344, Hyde asserted that counsel was ineffective for failing to file a motion to visit the crime scene. In affirming the circuit court’s summary dismissal of this claim, we stated:
‘With respect to counsel’s decision not to file a motion to allow Hyde to accompany them to the crime scene, Hyde alleged that ‘[p]ertinent information and insights into the occurrences could have been obtained from such a visit’ and that such a visit would have ‘jogged’ his memory about the crime and helped his counsel to ‘better interview’ him (C. 88); however, he failed to specifically identify what information would have been obtained had he visited the crime scene or how that information would have been helpful to his defense.”
950 So.2d at 370.
In his amended petition, Washington merely asserted that he should have been allowed to view the crime scene with counsel so that he could inform counsel that the McKinnons kept a key hidden on the front porch. Certainly, Washington could have informed counsel about the key without visiting the crime scene. Washington failed to plead how he was prejudiced by counsel’s failure to ensure that he visited the crime scene. The circuit court did not abuse its discretion in summarily dismissing this claim. See Hyde, supra.
e.
Washington next argues that the circuit court erred in summarily dismissing his claim that counsel was ineffective for failing to develop a relationship of trust with him. Washington asserted in his amended petition that the ABA Guidelines provide that “ ‘[c]ounsel at all stages of the case should make every appropriate effort to establish a relationship of trust with the client, and should maintain close contact with the client.’ ABA Guidelines 10.5.” (C.R. 241.) The circuit court dismissed this claim stating that it did not “contain a clear and specific statement of fact that would entitle [Washington] to relief.” (C.R. 598.)
In Morris v. Slappy, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), the United States Supreme Court stated:
*62 “No court could possibly guarantee that a defendant will develop ... rapport with his attorney — privately retained or provided by the public.... Accordingly, we reject the claim that the Sixth Amendment guarantees a ‘meaningful relationship’ between an accused and his counsel.”
461 U.S. at 13-14.
In relation ■ to this claim, the United States Court of Appeals for the Fifth Circuit has stated:
“Crawford claims that his trial counsel ... was ineffective because he did not establish a ‘relationship of trust’ with his client. Crawford cites no authority for the proposition that a criminal defendant is entitled to a ‘meaningful’ relationship with counsel or that the denial of such a relationship amounts to ineffective assistance of counsel. Further, in Morris v. Slappy, the Supreme Court explicitly ‘reject[ed] the claim that the Sixth Amendment guarantees a “meaningful relationship” between an accused and his counsel.’ 461 U.S. 1, 14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983).”
Crawford v. Epps, 353 Fed.Appx. 977, 990 (5th Cir.2009) (not reported in F.3d). See also State v. Ketterer, 111 Ohio St.3d 70, 82, 855 N.E.2d 48, 66 (2006) (“[T]he ‘Sixth Amendment does not guarantee “rapport” or a “meaningful relationship” between client and counsel.’ ”); United States v. Eiland, 525 F.Supp.2d 37, 50 (D.D.C.2007) (“A defendant is not constitutionally entitled to any more of [a] meaningful relationship with his court-appointed attorneys than to be competently and effectively represented by those court-appointed attorneys.”); United States v. Burns, 990 F.2d 1426, 1437 (4th Cir.1993) (“[T]he Sixth Amendment does not guarantee representation by a lawyer in whom the defendant reposes special confidence or with whom the defendant is able to establish a ‘meaningful relationship.’”); United States v. Machor, 879 F.2d 945, 952 (1st Cir.1989) (“[T]he right to counsel does not involve the right to a ‘meaningful relationship’ between an accused and his counsel.”); Siers v. Ryan, 773 F.2d 37, 44 (3rd Cir.1985) (“Although indigents in criminal cases have a fundamental right to have counsel appointed to represent them, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), there is no corollary right to have any special rapport or even confidence in the court-appointed counsel.”).
The circuit court correctly found that there was no “material issue of fact or law” that would entitle Washington to relief; therefore, the court correctly dismissed this claim. See Rule 32.7(d), Ala. R.Crim. P.
f.
Washington next argues that the circuit court erred in summarily dismissing this claim that counsel was ineffective for failing to move for a change of venue because, he says, the prejudicial pretrial publicity denied him his constitutional right to a fair and impartial trial.
In dismissing this claim, the circuit court stated:
“This ground fails pursuant to Rule 32.6(b) because it does not contain a clear and specific statement of facts that would entitle [Washington] to relief. Nowhere in the petition is there an allegation of particular media coverage that rendered Elmore County an unfair venue. Nowhere in the petition is a juror named who was unable to give Mr. Washington a fair trial. [Washington] is not entitled to relief without a specific and full disclosure of the factual basis for the grounds.”
(C.R. 599.)
In affirming the circuit court’s summary dismissal of a claim that counsel was inef *63 fective for failing to move for a change of venue, we recently stated:
“[Moody] pleaded no facts about the actual extent or nature of the media coverage that would indicate that it was biased or prejudicial or that it had saturated the community. In addition, he did not name a single juror who sat on his jury who had read or heard about the case. Contrary to Moody’s apparent belief, ‘the existence of widespread publicity does not require a change of venue.’ McGahee v. State, 885 So.2d 191, 211 (Ala.Crim.App.2003). Because Moody failed to allege sufficient facts in his petition that would indicate that he would have been entitled to a change of venue, he failed to plead sufficient facts to indicate that his appellate counsel was ineffective for not raising this claim on appeal. Therefore, summary dismissal of this claim of ineffective assistance of appellate counsel was proper.”
Moody v. State, 95 So.3d 827, 845 (Ala.Crim.App.2012).
The same is true in this case. Washington pleaded no facts to show that the publicity had saturated the community, nor did he name any juror who had read or heard about the case. Washington failed to plead full facts in support of this claim; therefore, summary dismissal was proper.
Moreover, the record shows that counsel moved that juror questionnaires be completed in this case and moved that the jury be sequestered during trial. Although counsel did not move for a change of venue, the “[decision not to request change of venue is not ineffective assistance of counsel, but is rather a matter of trial strategy.” Cox v. State, 660 So.2d 233, 235 (Ala.Crim.App.1994). See also Huls v. State, 301 Ark. 572, 580, 785 S.W.2d 467, 471 (1990) (“The decision of whether to seek a change of venue is largely a matter of trial strategy and therefore not an issue to be debated under our post-conviction rule.”); Wilson v. State, 286 Ga. 141, 143, 686 S.E.2d 104, 107 (2009) (“ ‘[T]he decision whether ... to file ... a motion for change of venue, as with other motions, is a matter of trial strategy or tactics....’”); People v. Aspy, 292 Mich.App. 36, 808 N.W.2d 569 (2011) (“ ‘The decision whether or not to move for a change of venue constitutes a matter of trial strategy.’ ”); Brawner v. State, 947 So.2d 254, 262 (Miss.2006) (“This Court has held that defense counsel is under no duty to attempt to transfer venue; therefore, the decision not to seek a change of venue would fall within the realm of trial strategy.”).
The circuit court did not abuse its discretion in dismissing this claim based on the deficient pleadings.
g-
Washington next argues that the circuit court erred in summarily dismissing his claim that counsel was ineffective for allegedly failing to conduct effective voir dire examination.
The circuit court stated the following in regard to this claim:
“This ground fails pursuant to Rule 32.6(b) because it does not contain a clear and specific statement of facts that would entitle [Washington] to relief. [Washington] fails to identify which juror or jurors should have been disqualified. [Washington] fails to describe in particular how much more individual jurors should have been asked, and how that would entitle [Washington] to relief.
“[Washington] fails to take into account any strategic decision involved in striking the jury in general, and thus this claim also fails under Rule 32.7(d) because no material issue of fact or law *64 exists which would entitle [Washington] to relief and no purpose would be served by further proceedings. This claim is insufficient to render [counsel’s] decisions outside the range of reasonable professional judgment, or to constitute an error so serious that Mr. Washington’s Sixth Amendment rights were violated.”
(C.R. 599.)
The circuit court correctly summarily dismissed this claim because Washington failed to identify specific jurors by name; he failed to plead what should have been done during voir dire examination; and he failed to plead how he was prejudiced by counsel’s performance during the voir dire examination. See Rule 32.6(b), Ala. R.Crim. P.
Moreover,
“Generally, ‘[a]n attorney’s actions during voir dire are considered to be matters of trial strategy,’ which ‘cannot be the basis’ of an ineffective assistance claim ‘unless counsel’s decision is ... so ill chosen that it permeates the entire trial with obvious unfairness.’ ”
Neill v. Gibson, 263 F.3d 1184, 1193 (10th Cir.2001) (quoting Nguyen v. Reynolds, 131 F.3d 1340, 1349 (10th Cir.1997)). “Counsel, like the trial court, is granted ‘particular deference’ when conducting voir dire.” Keith v. Mitchell, 455 F.3d 662, 676 (6th Cir.2006).
The circuit court did not abuse its discretion in summarily dismissing this claim based on Washington’s deficient pleadings.
h.
Washington next argues that the circuit court erred in summarily dismissing his claim that counsel was ineffective for failing to procure expert witnesses. Specifically, Washington pleaded in his amended petition that counsel should have secured the services of a DNA expert, a psychologist, an eyewitness expert, and an expert on drug addiction.
In dismissing this claim, the circuit court stated:
“The claims that call for an expert witness in DNA, psychology, and drug addiction fail pursuant to Rule 32.6(b) for lack of specificity. The claims do not contain a full disclosure of the factual basis of the grounds regarding any DNA, psychology, or drug addiction expert or what exactly his/her testimony would be that would entitle [Washington] to relief.
“The claim that calls for an eyewitness expert fails under Rule 32.7(d) because no material issue of fact or law exists which would entitle [Washington] to relief, and no purpose would be served by further proceedings. The eyewitness in this case ... did not identify Mr. Washington in her testimony.”
(C.R. 599-600.)
The circuit court correctly found that this claim was insufficiently pleaded because Washington failed to plead the identity of experts or the content of those experts’ testimony. See McNabb v. State, 991 So.2d 313 (Ala.Crim.App.2007); Woods v. State, 957 So.2d 492 (Ala.Crim.App.2004), rev’d on other grounds, 957 So.2d 533 (Ala.2006).
Moreover, the trial record shows that trial counsel did move for a DNA expert. (Trial record, C.R. 107.) The circuit court granted this motion and appointed an independent DNA expert. (Trial record, C.R. 139.) Also, counsel moved that Washington be mentally evaluated before trial. That motion was granted, and Washington was evaluated. Counsel also retained the services of an independent psychologist when counsel asked and received funds to hire Dr. Karen Salekin. Also, no individual specifically identified *65 Washington as the person near the victims’ home. The eyewitness merely said that she saw a man between 50 and 60 wearing a dark hat and driving an old truck near the victims’ home on the night they were murdered; therefore, no eyewitness expert was necessary.
The circuit court did not abuse is discretion in summarily dismissing this claim,
i.
Washington next asserts that the circuit court erred in summarily dismissing his claim that trial counsel’s opening statement during the guilt phase was deficient, rendering trial counsel ineffective.
In dismissing this claim, the circuit court stated:
“The claim fails pursuant to Rule 32.6(b) because it does not contain a clear and specific statement of the grounds upon which relief is sought, nor does it include a full disclosure of the factual basis of those grounds. There is no allegation of exactly what defense theory Mr. Perdue should have put forth that would have been ‘coherent.’
“[Washington] fails to take into account any strategic decisions involved in developing his opening statement, and thus this claim also fails under Rule 32.7(d) because no material issue of fact or law exists which would entitle [Washington] to relief, and no purpose would be served by further proceedings. This claim is insufficient to render Mr. Per-due’s decisions outside the range of reasonable professional judgment or to constitute an error so serious that Mr. Washington’s Sixth Amendment rights were violated.”
(C.R. 599-600.)
In his amended postconviction petition, Washington merely pleaded the following:
“Mr. Washington’s counsel, D. Wayne Perdue, made his first impression on the jury with an extremely cursory opening statement (it spanned only four pages of transcript) that conclusorily denied the import of few pieces of evidence to be presented by the state — it did not present anything resembling a coherent defense theory likely to resonate with a jury.”
(C.R. 250.)
Washington failed to plead sufficient facts in regard to this claim. He failed to identify any alleged errors that resulted in his counsel’s performance being deficient. Nor did he plead what counsel should have done to be effective. Washington failed to satisfy the full-fact-pleading requirements of Rule 32.2(b), Ala. R.Crim. P.
Also, “[t]he length of the opening statement is not of itself dispositive of either prong of the Strickland test, and there is no constitutional rule that counsel must employ any particular rhetorical technique in the opening statement.” Cirincione v. State, 119 Md.App. 471, 498, 705 A.2d 96, 108 (1998).
The circuit court did not abuse its discretion in summarily dismissing this claim.
j-
Washington next argues that the circuit court erred in summarily dismissing his claim that counsel failed to challenge the State’s presentation of evidence. Specifically, he asserts that counsel failed to challenge the admission of photographs of the crime scene and an anniversary photograph of the victims, failed to adequately cross-examine witnesses, and failed to challenge the State’s lack of evidence of intent to kill.
In dismissing this claim, the circuit court stated:
“The grounds in this section regarding the introduction of a photograph of the McKinnons fails pursuant to Rule *66 32.6(b) for failure to state a clear and specific statement of the grounds upon which relief is sought, and does not include a full disclosure of the factual basis of those grounds. Even if Mr. Washington’s counsel had challenged the introduction of this photo, there is no reasonable probability that the outcome of the case would be different. Therefore, this claim also fails under Rule 32.7(d) because no material issue of fact or law exists that would entitle [Washington] to relief, and no purpose would be served by further proceedings.
[[Image here]]
“The ground regarding the cross-examination of State witnesses fails under Rule 32.6(b) for failure to state a clear and specific statement of the grounds upon which relief is sought, and does not include a full disclosure of the factual basis of those grounds....
“The ground regarding a failure of defense counsel to argue that the State had presented no evidence of intent fails pursuant to Rule 32.7(d). No material issue of fact or law exists which would entitle [Washington] to relief, and no purpose would be served by further proceedings. In addition, this claim fails under Rule 32.6(b) because [Washington] failed to plead any specific facts to support his claim, and he did not indicate how counsel should have effectively argued a lack of intent, and how that argument would have resulted in a different outcome for [Washington].”
(C.R. 601-02.)
The crime scene photographs and the victims’ anniversary photograph were admissible. See Brooks v. State, 973 So.2d 380 (Ala.Crim.App.2007). Counsel was not ineffective for failing to object to the admission of photographs. Moreover, “[i]solated failures to object are typically not sufficient grounds for a finding of ineffective assistance.” Nadal v. State, 348 S.W.3d 304, 321 (Tex.App.2011).
In brief, Washington argues that the court erred in summarily dismissing his claim that counsel was ineffective for failing to effectively cross-examine state witnesses. He fails to specifically identify any witnesses in his brief.
Also, counsel did not act unreasonably in failing to challenge the State’s evidence of intent. The two victims were beaten to death. Clearly the very manner of their death showed an intent to kill.
Moreover, “effectiveness of counsel does not lend itself to measurement by picking through the transcript and counting the places where objections might be made. Effectiveness of counsel is not measured by whether counsel objected to every question and moved to strike every answer.” Brooks v. State, 456 So.2d 1142, 1145 (Ala.Crim.App.1984). “ ‘[Decisions of when and how to raise objections are generally matters of trial strategy.’ ” Daniels v. State, 296 Ga.App. 795, 800, 676 S.E.2d 13, 19 (2009) (quoting Holmes v. State, 271 Ga.App. 122, 124, 608 S.E.2d 726, 729 (2004)).
The circuit court did not abuse its discretion in summarily dismissing this claim.
k.
Washington next argues that the circuit court erred in summarily dismissing his claim that counsel failed to state a “coherent theory of defense.” Specifically, he argues that witnesses who would have “helped shape a defense theory” should have been interviewed. Washington failed to plead what that “coherent theory” might have been.
In regard to this claim, the circuit court stated:
“This ground fails pursuant to Rule 32.6(b) for failure to state a clear and *67 specific statement of the grounds upon which relief is sought, nor does it include a full disclosure of the factual basis of those grounds. Nowhere in the petition is there an allegation of exactly what Mr. Perdue or Mr. James should have presented as a ‘coherent’ defense theory. Mr. Perdue and Mr. James are not required nor are they encouraged to fabricate theories on behalf of their client.”
(C.R. 602.) We agree with the circuit court that Washington failed to plead sufficient facts to satisfy the pleading requirements. Washington failed to identify what defense theory counsel should have presented to the jury. Thus, Washington failed to plead full facts that would entitle him to relief, and summary dismissal was proper.

1.

Washington next argues that the circuit court erred in summarily dismissing his claim that counsel was ineffective for failing to object to numerous instances of alleged prosecutorial misconduct. He asserts that the prosecutor misstated the law, appealed to the jury’s emotions and prejudices, improperly discussed the victims throughout the trial, misstated the requirements for sentencing, mischaracter-ized the jury’s role in sentencing, and vouched for the credibility of the witnesses.
In summarily dismissing this claim, the circuit court stated:
“This ground fails pursuant to Rule 32.6(b) for failure to state a clear and specific statement of the grounds upon which relief is sought, and because it does not include a full disclosure of the factual basis of those grounds. This ground merely states broad allegations with no specific statements or incidents of conduct by the prosecutor. There are also no grounds stated that would entitle Mr. Washington to relief.”
(C.R. 603.)
Washington failed to plead what specific instances of prosecutorial misconduct his counsel failed to object to at trial. “ ‘Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis must be included in the petition itself.’ ” Lee v. State, 44 So.3d 1145, 1153 (Ala.Crim.App.2009) (quoting Hyde v. State, 950 So.2d 344, 356 (Ala.Crim.App.2006)). Summary dismissal of this claim was proper.
m.
Washington further asserts that the circuit court erred in summarily dismissing his claim that counsel was ineffective for failing to move to continue the penalty phase when the guilt phase ended after 5:00 p.m. on a Friday and counsel could have had the long weekend, he says, to prepare for the penalty phase.[6] The record shows that at the end of the guilt phase, on a Friday afternoon, the court asked the jury if it had a problem with moving on to the penalty phase.
The circuit court stated the following when dismissing this claim:
“This ground fails pursuant to Rule 32.7(d) because no facts are alleged that would entitle [Washington] to relief. Therefore, no purpose would be served by further proceedings. [Washington] fails to allege how not moving for a continuance was serious unprofessional error....”
(C.R. 604.)
Washington failed to allege how he was prejudiced by counsel’s failure to seek the three-day continuance or what counsel *68 could have done in that limited time. Washington failed to plead prejudice; therefore, summary dismissal was proper. See Boyd, supra.

n.

Washington next argues that the circuit court erred in summarily dismissing his claim that counsel was ineffective for failing to obtain experts to testify at the penalty phase.
As the State asserts in brief, the circuit court allowed Washington to amend his petition in regard to this claim and evidence was presented concerning this claim at the evidentiary hearing. This claim is not supported by the record.
o.
Washington next asserts that the circuit court erred in summarily dismissing his claim that counsel was ineffective for failing to object to improper statements he alleged the prosecutor made during the penalty phase.
In dismissing this claim, the circuit court stated:
“This ground fails pursuant to Rule 32.6(b) for failure to state a clear and specific statement of the grounds upon which relief is sought, and it does not include a full disclosure of the factual basis of those grounds. [Washington] has made bare allegations that do not warrant any further proceedings.”
(C.R. 605-06.)
In his amended petition, Washington merely pleaded the following in regard to this claim:
“The State made improper and prejudicial remarks throughout the trial, misstating the law during its closing argument, improperly relying on arguments that appealed to the jury’s prejudices and emotions, improperly discussing the victims throughout the trial misstating the requirements of Alabama’s sentencing laws and miseharacterizing the burden placed on the jurors in determining whether to impose a death sentence, improperly vouching for the credibility of witnesses, and improperly offering personal opinions.”
(C.R. 257.)
Washington failed to identify the specific instances of alleged prosecutorial misconduct that he maintained were objectionable or how he was prejudiced by the alleged misconduct. The circuit court correctly found that this claim was due to be summarily dismissed based on Washington’s failure to plead full facts in regard to this claim. See Rule 32.2(b), Ala. R.Crim. P.
P-
Washington next argues that the circuit court erred in summarily dismissing his claim that counsel was ineffective for failing to object to the trial court’s instructions during the penalty phase. The circuit court found that “[t]his claim fails pursuant to Rule 32.7(d) because it is without merit. No purpose would be served by further proceedings.” (C.R. 606.)
In his amended petition, Washington pleaded that counsel should have objected to the trial court’s instructions on mitigating circumstances. He asserted that the court erroneously instructed the jury that only one mitigating circumstance applied in the case.
The record shows that the circuit court gave the following jury instruction:
“The law of Alabama provides a list of some of the mitigating circumstances you may consider. That list is not a complete list of mitigating circumstances that you may consider. I will now read you a list of some of the mitigating circumstances that you may consider.
“The following are the mitigating circumstances included in the statue. This *69 list is not exhaustive. There are other circumstances that may be considered by you as well.
“In going through the mitigating circumstances that are listed in the Code of Alabama here I find one that is applicable. And that is that the defendant has no significant history of prior criminal activity.
“As I told you, a mitigating circumstances does not have to be included in the list that I read to you in order for it to be considered by you.
“In addition to the mitigating circumstances or circumstance previously specified, a mitigating circumstance shall include any aspect of a defendant’s character or record, and any of the circumstances of the offense that the defense offers as a basis for the sentence of life imprisonment without parole instead of death.”
(Trial R. 959-60.)
This claim was not supported by the record. The circuit court correctly summarily dismissed this claim pursuant to Rule 32.7(d), Ala. R.Crim. P., because “no material issue of fact or law exist[ed] which would entitle” Washington to relief.
q-
Washington further argues that the circuit court erred in summarily dismissing his claim that counsel was ineffective for failing to challenge the constitutionality of Alabama’s method of execution — lethal injection. Specifically, Washington pleaded that counsel should have cited numerous studies and articles concerning the procedures for administering lethal injection. Washington was convicted in January 2004. The studies and articles that Washington cites in his pleadings in regard to this claim were published in June 2004, April 2005, April 2006, and later.
The circuit court stated the following when dismissing this claim:
“This claim fails pursuant to Rule 32.6(b) for failure to state a clear and specific statement of the grounds upon which relief is sought, and does not include a full disclosure of the factual basis of those grounds.
“This claim also fails pursuant to Rule 32.7(d) in that no material issue of fact or law exists which would entitle [Washington] to relief and no purpose would be served by further proceedings. This claim is baseless as [Washington] was sentenced to death by lethal injection prior to the development of conclusive evidence demonstrating that the method was cruel and unusual, if it is. All case law and citations relied on by [Washington] occurred after he was sentenced.”
(C.R. 606.)
We agree with the circuit court. Counsel cannot be ineffective for failing to cite to studies and articles that were not yet in existence. “[C]ounsel cannot be faulted for failing to assert claims that did not exist at the time they represented [the defendant].” Walton v. State, 847 So.2d 438, 445 (Fla.2003).
Moreover, in Ex parte Belisle, 11 So.3d 323 (Ala.2008), the Alabama Supreme Court, relying on the United States Supreme Court’s decision in Baze v. Rees, 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008), held that Alabama’s method of performing lethal injection was constitutional. The Court stated:
“The Supreme Court upheld the constitutionality of Kentucky’s method of execution, Baze [v. Rees, 553 U.S. 35, 62,] 128 S.Ct. [1520] 1538 [170 L.Ed.2d 420 (2008) ], and noted that ‘[a] State with a lethal injection protocol substantially similar to the protocol we uphold today would not create a risk that meets *70 this standard.’ Baze, [553 U.S. at 61], 128 S.Ct. at 1537. Justice Ginsburg and Justice Souter dissented from the main opinion, arguing that ‘Kentucky’s protocol lacks basic safeguards used by other States to confirm that an inmate is unconscious before injection of the second and third drugs.’ Baze, [553 U.S. at 114], 128 S.Ct. at 1567 (Ginsburg, J., dissenting). The dissenting Justices recognized, however, that Alabama’s procedures, along with procedures used in Missouri, California, and Indiana ‘provide a degree of assurance — missing from Kentucky’s protocol — that the first drug had been properly administered.’ Baze, [553 U.S. at 121], 128 S.Ct. at 1571 (Ginsburg, J., dissenting).
“The State argues, and we agree, that Belisle, like the inmates in Baze, cannot meet his burden of demonstrating that Alabama’s lethal-injection protocol poses a substantial risk of harm by asserting the mere possibility that something may go wrong. ‘Simply because an execution method may result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of “objectively intolerable risk of harm” that qualifies as cruel and unusual.’ Baze, [553 U.S. at 50], 128 S.Ct. at 1531. Thus, we conclude that Alabama’s use of lethal injection as a method of execution does not violate the Eighth Amendment to the United States Constitution.”
11 So.3d at 339.
The circuit court did not abuse its discretion in summarily dismissing this claim,
r.
Washington next argues that the circuit court erred in summarily dismissing his claim that counsel was ineffective for failing to object to double counting or using an element of the capital offense— robbery — both as an element of the capital-murder offense and as an aggravating circumstance.
The circuit court stated the following concerning this claim: “This claim is without merit and fails pursuant to Rule 32.7(d). No material issue of fact or law exists which would entitle [Washington] to relief. No purpose would be served by further proceedings.” (C.R. 607.)
This Court has repeatedly upheld the practice of using an element of the capital-murder offense as an aggravating circumstance. See, e.g., Brown v. State, 74 So.3d 984 (Ala.Crim.App.2010); James v. State, 61 So.3d 357 (Ala.Crim.App.2010); Morris v. State, 60 So.3d 326 (Ala.Crim.App.2010). Counsel cannot be ineffective for failing to raise a claim that has no merit. Lee v. State, 44 So.3d 1145, 1173 (Ala.Crim.App.2009).
The circuit court did not abuse its discretion in summarily dismissing this claim because there was “no material issue of fact or law” that would entitle Washington to relief. See Rule 32.7(d), Ala. R.Crim. P.
s.
Washington next argues that the circuit court erred in summarily dismissing his claim that counsel was ineffective for allegedly failing to present a mitigation case.
Rule 32 counsel was allowed to pursue this claim at the evidentiary hearing. Thus, this claim was not summarily dismissed and is addressed in Part I.B. of this opinion.
t.
Washington further argues that the circuit court erred in summarily dismissing his claim that counsel was ineffective for failing to object to the trial court’s express consideration of victim-impact evidence. In his amended petition, Washington pleaded that counsel should have objected when victim-impact evidence was *71 introduced at the judicial sentencing hearing. The record shows that the victims’ daughter made a statement asking the trial court to follow the jury’s recommendation and sentence Washington to death.
The circuit court stated the following concerning this claim:
“This claim fails pursuant to Rule 32.7(d) because it fails to state a claim, and no material issue of fact or law exists which would entitle [Washington] to relief. No purpose would be served by further proceedings. This testimony was given during the penalty phase of the trial. Victim impact evidence is permitted at the penalty phase. Ex parte Slaton, 680 So.2d 909, 927 (Ala.1996).”
(C.R. 607.)
The record shows no indication that the circuit court considered the daughter’s remarks when determining Washington’s sentence. To the contrary, the circuit court specifically stated in its sentencing order: “In weighing the aggravating and mitigating circumstances, the Court is aware of the nature of the process as defined in Section 13A-5-48.” (Trial R. 201). This Court has found no error in the admission of victim-impact evidence when there is no indication in the sentencing order that the remarks were considered by the sentencing court. See Arthur v. State, 711 So.2d 1031 (Ala.Crim.App.1996) (no error in the admission of statements in pre-sentence report that victim’s family wished that the defendant be sentenced to death when there was no indication in the sentencing order that the court considered these statements). Counsel is not ineffective for failing to object to an issue that has no merit. See James, supra.
Thus, the circuit court did not abuse its discretion in summarily dismissing this claim because “no material issue of fact or law” existed that would entitle Washington to relief. See Rule 32.7(d), Ala. R.Crim. P.
u.
Washington argues that the circuit court erred in summarily dismissing his claim that appellate counsel was ineffective for failing to argue trial counsel’s ineffectiveness. In his amended petition, Washington pleaded that appellate counsel “failed to procure any medical record for Mr. Washington or his family. Nor did Mr. Washington’s appellate counsel have Mr. Washington independently examined by a mental health expert” and that appellate counsel was ineffective for failing to argue trial counsel’s ineffectiveness. (C.R. 304.)
Initially, we note that the only Alabama rule addressing the appointment of experts for a case on appeal is Rule 33A, Ala. R.App. P. This rule specifically provides: “This rule shall apply only to appeals taken to the supreme court in cases involving controversies respecting rates and charges of telephone companies or public utilities.” Thus, counsel cannot be ineffective for failing to secure an expert on appeal when there is no procedure for securing an expert except in cases before the Alabama Supreme Court involving public utilities. Counsel is not ineffective for failing to raise a baseless claim. See Lee, 44 So.3d at 1173.
When summarily dismissing this claim, the circuit court stated:
“Appellate counsel’s failure to raise any ineffective assistance of counsel issues has not prejudiced Mr. Washington. These claims can and have been properly brought in a Rule 32 petition. This claim fails pursuant to Rule 32.7(d) because it fails to state a claim, and no material issue of fact or law exists which would entitle [Washington] to relief. No purpose would be served by further proceedings.”
(C.R. 610.)
This Court’s records show that appellate counsel was appointed after the *72 time for filing a motion for a new trial had expired. Thus, appellate counsel had no opportunity to raise a claim of ineffective assistance of counsel and to make a record for purposes of appeal. This postconviction proceeding was Washington’s first opportunity to raise a claim of ineffective assistance of trial counsel. See Ex parte Ingram, 675 So.2d 863 (Ala.1996). We have stated the following concerning raising a claim of ineffective assistance of counsel on direct appeal:
“The difficulty of reviewing claims of ineffective assistance of counsel on direct appeal, when those issues have not been developed on the record, was addressed by the United States Supreme Court in Massaro v. United States, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). The United States Supreme Court stated:
“ ‘When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose. Under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant claiming ineffective counsel must show that counsel’s actions were not supported by a reasonable strategy and that the error was prejudicial. The evidence introduced at trial, however, will be devoted to issues of guilt or innocence, and the resulting record in many cases will not disclose the facts necessary to decide either prong of the Strickland analysis. If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it. The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel’s alternatives were even worse. See Guinan [v. United States, 6 F.3d 468 (7th Cir.1993) ], at 473 (Easterbrook, J., concurring) (“No matter how odd or deficient trial counsel’s performance may seem, that lawyer may have had a reason for acting as he did.... Or it may turn out that counsel’s overall performance was sufficient despite a glaring omission ... ”). The trial record may contain no evidence of alleged errors of omission, much less the reasons underlying them. And evidence of alleged conflicts of interest might be found only in attorney-client correspondence or other documents that, in the typical criminal trial, are not introduced. See, e.g., Billy-Eko [v. United States, 8 F.3d 111 (2d Cir.1993) ], at 114. Without additional factual development, moreover, an appellate court may not be able to ascertain whether the alleged error was prejudicial.’
“538 U.S. at 504-05, 123 S.Ct. 1690. The Massaro Court further stated:
“ ‘Even meritorious claims would fail when brought on direct appeal if the trial record were inadequate to support them. Appellate courts would waste time and resources attempting to address some claims that were meritless and other claims that, though colorable, would be handled more efficiently if addressed in the first instance by the district court on collateral review.’
“538 U.S. at 506-07.”
Robitaille v. State, 971 So.2d 43, 68-69 (Ala.Crim.App.2005).
*73 The circuit court did not abuse its discretion in dismissing this claim because it presented “no material issue of fact or law” that would warrant further proceedings. See Rule 32.7(d), Ala. R.Crim. P.
v.
Washington further asserts that the circuit court erred in summarily dismissing his claim that appellate counsel was ineffective for failing to raise the claim of prosecutorial misconduct in his brief on direct appeal.
The circuit court stated the following when summarily dismissing this claim:
“This ground fails pursuant to Rule 32.6(b) for failure to state a clear and specific statement of the grounds upon which relief is sought, and it does not include a full disclosure of the factual basis of those grounds. [Washington] fails to describe exactly which issues should have leapt out at appellate counsel, and how those specific instances were obviously improper.”
(C.R. 610.)
Washington failed to identify any specific instances of prosecutorial misconduct that appellate counsel failed to raise on appeal. Washington merely pleaded that “the failure of appellate counsel to raise other claims on direct appeal constitutes performance that fell below ‘an objective standard of reasonableness.’ ” (C.R. 305-06.) Clearly, Washington failed to plead full facts in support of this claim; therefore, it was properly summarily dismissed.
Moreover, as the United States Supreme Court stated in Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983):
“Experienced advocates have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. Selecting the most promising issues for review has assumed a greater importance in an era when the time for oral argument is strictly limited in most courts and when page limits on briefs are widely imposed.”
463 U.S. at 746.
w.
At the conclusion of several of Washington’s arguments in this section of his brief on appeal, Washington asserts that the postconviction court erred in not allowing him to amend his petition. Specifically, Washington argues that the circuit court erred in not allowing him to amend the claims (1) that counsel was ineffective in the guilt stage for failing to interview family members; (2) that counsel was ineffective for failing to move for a change of venue; (3) that counsel was ineffective during voir dire; (4) that counsel was ineffective for failing to procure expert witnesses; (5) that counsel was ineffective for failing to object to numerous instances of alleged prosecutorial misconduct in the guilt phase; (6) that counsel was ineffective for failing to object to the comments made by the prosecutor during the penalty phase; and (7) that appellate counsel was ineffective for failing to raise the issue of prosecutorial misconduct.
Washington filed his original postconviction petition in August 2006 and an amended petition in October 2006. In July 2007, the circuit court dismissed the majority of Washington’s claims and scheduled an evi-dentiary hearing on the remaining claims for September 7, 2007. In August 2007, Washington moved to amend his Rule 32 petition. The State objected and argued that it had not been served with the request to amend, that an amendment would delay the September hearing, that any amendment would prejudice the State, and that Washington could not amend the *74 claims that had been summarily dismissed in July 2007. The circuit court allowed amendments of the claims it had not dismissed in July 2007 and denied the motion to amend as it related to the claims that had already been dismissed. (C.R. 835.)
As this Court stated in Broadnax v. State, 987 So.2d 631 (Ala.Crim.App.2007):
“Rule 32.7(b) provides that ‘[a]mend-ments to pleadings may be permitted at any stage of the proceedings prior to entry of judgment.’ (Emphasis added.) When a partial judgment is entered on a Rule 32 petition, as is often the case in a Rule 32 petition challenging a death sentence, those claims that had previously been disposed of by the circuit court cannot be amended; such an amendment would clearly be after entry of judgment and in violation of Rule 32.7(b). See, e.g., Hodges v. State, [Ms. CR-04-1226, March 23, 2007] — So.3d -(Ala.Crim.App.2007).”
987 So.2d at 639 (emphasis in original).
The circuit court correctly denied Washington’s motion to amend the claims that had been summarily dismissed in July 2007. Accordingly, the circuit court did not abuse its discretion in regard to this claim.
D.
Washington further argues that the circuit court erred in finding that his claim that his conviction violated Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), was procedurally barred in the postconviction proceeding. Specifically, he argues that the jury did not unanimously determine the aggravating circumstances that warranted the death penalty, that there was no basis for concluding that the aggravating circumstances existed beyond a reasonable doubt, that the jurors were misinformed about the significance of their role in sentencing, and that the death penalty could be imposed only if the jury unanimously voted for that sentence.
This claim was correctly found to be procedurally barred in this postconviction proceeding. See Smith v. State, 71 So.3d 12 (Ala.Crim.App.2008).
Moreover, the jury unanimously convicted Washington of murdering the McKinnons during the course of a robbery and a burglary. Its verdict in the guilt phase established beyond a reasonable doubt the existence of the aggravating circumstances that the murders occurred during the course of a robbery and during the course of a burglary. There was no Ring violation in this case. See Ex parte Waldrop, 859 So.2d 1181 (Ala.2002). Washington was due no relief on this claim.
E.
Washington further argues that the circuit court erred in finding that the substantive claim that the manner of execution in Alabama is unconstitutional is procedurally barred in a postconviction proceeding.
This Court has repeatedly held that this claim is procedurally barred in a postcon-viction proceeding because it could have been raised at trial or on appeal but was not. See Lee v. State, 44 So.3d 1145 (Ala.Crim.App.2009); Bush v. State, 92 So.3d 121 (Ala.Crim.App.2009); Boyd v. State, 913 So.2d 1113 (Ala.Crim.App.2003); Davis v. State, 720 So.2d 1006 (Ala.Crim.App.1998).
Moreover, as we stated above, the Alabama Supreme Court in Ex parte Belisle, supra, held that Alabama’s method of administering the lethal injection, a three-drug protocol, is constitutional. Thus, this *75 claim has been determined adversely to Washington.
P.
Last, Washington makes the following argument in his brief to this Court:
“The circuit court dismissed Washington’s remaining claims as procedurally barred pursuant to Ala. R.Crim. P. 32.2(a)(2), or (5), because they were raised or could have been raised at trial, or because they were not raised on direct appeal. As discussed above, many of these issues were not raised or were raised improperly as a result of counsel’s ineffectiveness. The underlying merits of any substantive claim must necessarily be considered in addressing these claims. Washington thus objects to the imposition of the procedural defaults in this case. See Strickland [v. Washington ], 466 U.S. 668 [(1984)].”
(Washington’s brief, p. 91.)
This claim fails to comply with the briefing requirements of Rule 28(a)(10), Ala. R.App. P. This rule states that the argument section of an appellate brief shall contain the following:
“An argument containing the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on.”
“Failure to comply with Rule 28(a)(10) has been deemed a waiver of the issue presented.” C.B.D. v. State, 90 So.3d 227, 239 (Ala.Crim.App.2011). Therefore, Washington has waived this argument on appeal.
For the foregoing reasons, we affirm the circuit court’s denial of Washington’s petition for postconviction relief.
AFFIRMED.
WELCH, KELLUM, and BURKE, JJ, concur.
WINDOM, P. J., recuses herself.

. This case was originally assigned to another member of this Court; it was reassigned to Judge Joiner on March 1, 2011.

. This claim is addressed in depth in Part I.B. of this opinion, where we address Washington’s claim that counsel was ineffective for failing to present mitigation evidence.

. We have taken judicial notice of our records related to Washington’s direct appeal. See Nettles v. State, 731 So.2d 626, 629 (Ala.Crim.App.1998).

. Here, as in Part I.B., infra, the evidence supported the conclusion that additional contact with family members would have resulted in cumulative or otherwise unhelpful evidence to Washington's case.

. The trial record shows that counsel moved that Washington be allowed to visit the crime scene with his attorneys. (Trial C.R. 21.) The circuit court granted that motion and noted that the visit would be coordinated with the district attorney’s office. (Trial C.R. 58.) The trial record also shows that counsel visited the crime scene in December 2003.

. The Monday following the weekend was a State holiday.